#### GREAT AMERICAN RESERVE INSURANCE COMPANY, Appellant,

#### v.

#### Mrs. Homer L. FRY, Appellee.

#### No. 11529.

Court of Civil Appeals of Texas.

Austin.

Sept. 20, 1967.

Rehearing Denied Oct. 4, 1967.

Brundidge, Fountain, Elliott & Churchill, L. E. Elliott, Ralph D. Churchill, Dallas, for appellant.

Sneed & Vine, J. P. Darrouzet, Austin, for appellee.

HUGHES, Associate Justice.

This suit was by Mrs. Homer L. Fry, appellee, to recover the proceeds of a group life insurance policy issued by Great American Reserve Insurance Company, appellant, under the provisions of Art. 5421m, Sec. 16 (B), Vernon's Tex.Civ.St.Ann., insofar as is pertained to and covered her deceased husband, Homer L. Fry.

Summary judgment for the amount sued for was rendered for appellee, except as to attorney's fees, the claim for which was severed.

The facts are undisputed. They are:

In 1962, the Legislature enacted Art. 5421m, 16(B) authorizing group life insurance coverage cancelling the indebtedness of purchasers of land under the Veteran's Land Program (Art. 5421m, V.T.C.S.).

We copy the relevant portions of this Article:

"Sec. 16(B). The Board may enter into a master contract or agreement with one or more life insurance companies authorized to do business in Texas to provide group life insurance coverage cancelling upon death the indebtedness due the Board of persons purchasing land under the Texas Veterans Land Program. Such contract shall not prohibit cancellation by the insurer of the entire contract upon reasonable notice to the Board but shall prohibit cancellation of individual coverage except as hereinafter expressly authorized. The master contract or agreement shall provide, in addition to those provisions of Article 3.50 of the Insurance Code of the State of Texas, that the life insurance coverage will be offered by the writing insurance company or companies to all such persons without a physical examination and that no such person shall be denied coverage because he is disabled at the time of application for such coverage. The policy contract shall express and control the contractual relationship between all parties thereto and shall be approved by the State Board of Insurance in accordance with the provisions of the Insurance Code of Texas, as amended. It shall not be mandatory that any person purchasing land under the Texas Veterans Land Program accept the offer of such coverage, and refusal by such person to accept the offer of such coverage shall not be a ground for the Board to decline to enter into a contract of sale and purchase with any such person. Such coverage shall be terminated as to any person of the group upon: (1) the satisfaction of the indebtedness due the Board; or (2) upon the Board's approval of a transfer of interest in the land being purchased from the Board; or (3) upon failure to make timely payment of the premium to be paid for such coverage; such master contract may provide that coverage will terminate upon the person purchasing land under the Texas Veterans Land Program attaining the age of sixty-five (65) years."

The program for group life insurance as authorized by the above article commenced on November 1, 1963, and pursuant to such statute appellant issued its Master Policy No. 686. This policy contained these provisions:

"SECTION 1. DEFINITIONS

a. 'ELIGIBLE PERSON' shall mean any person or persons, and his or their successors or assigns, who are buying land from the Veterans' Land Board under contract of sale and purchase, whether such land has been sold under Section 12, Section 16, or Section 19 (a) of the Texas Veterans' Land Act, Article 5421m, V.T.C.S., who has not attained the age of 65 on the date on which he would otherwise be eligible. * * *

SECTION 3. TERMINATION OF INSURANCE

The insurance on any INSURED PERSON shall continue in force until the earliest of the following dates: * * *

d. the next PREMIUM DUE DATE following his or her 65th birthday. * *

SECTION 9. MISSTATEMENT OF AGE

If a premium is paid on a PERSON over age 65, the Insurance Company shall have

no liability on account of such over-age PERSON and all premiums paid for such over-age PERSON shall be refunded. * * *

SECTION 14. PREMIUM RATE, ADJUSTMENT OF PREMIUM RATE, AND COLLECTED PREMIUM * *

c. ALL PREMIUMS shall be collected by the Veterans' Land Board and shall be paid by all INSURED PERSONS to the Veterans' Land Board at its offices in the General Land Office in Austin, Travis County, Texas.

The Veterans' Land Board shall retain three percent (3%) of all premiums collected for administrative services and shall pay the balance to the Insurance Company at its Home Office in Dallas, Texas within forty-five (45) days after its date of receipt by the Veterans' Land Board. Such balance shall be known as the COLLECTED PREMIUM.

Administrative services shall include the issuance and mailing of information about the insurance to new ELIGIBLE MEMBERS, issuance and mailing of certificate of insurance, issuance and mailing of premium notices, and collection of PREMIUMS. Information forms and certificate forms shall be furnished by the Insurance Company at its expense."

On May 1, 1963, appellant issued Certificate No. 3839, to Homer L. Fry, the "insured person," the initial coverage being for $5,834.77. We quote from this Certificate:

"An Insured Person shall mean any person buying land from the Veterans' Land Board of the State of Texas under Contract of Sale and Purchase, whether such land has been sold under Section 12, Section 16, or Section 19(a) of the Texas Veterans' Land Act, Article 5421m, V T.C.S., who has not attained the age

of 65 at the date hereof, and who has accepted insurance in accordance with the terms of the Group Policy issued to the Veterans' Land Board of the State of Texas. * * *

The insurance on any Insured Person shall continue in force until the earliest of the following dates: * * * (d) the next Premium Due Date following his or her 65th birthday."

Sometime prior to January 3, 1963, the Veterans' Land Board sent out brochures and a "group waiver card" to all purchasers of land under the Veterans' Land Program. On January 3, 1963, the General Land Office received the "group waiver card" signed by Homer L. Fry indicating that he was not interested in the insurance program. Homer L. Fry did not make any application for insurance under this program; nor did he ever receive the original or a copy of the said Master Policy No. 686. On March 30, 1963, appellant agreed in writing to extend the program sixty (60) days from May 1, 1963, and Jerry Sadler, Commissioner of General Land Office, pursuant thereto, sent out a notice to all land purchasers. In April, 1963, Homer L. Fry began payment of the premium on said insurance. He paid his premiums from May of 1963 through October 1, 1965; each premium was a semi-annual premium paid in advance; the same were applied through the premium due date of 11/1/65. Homer L. Fry died on December 21, 1965. Appellee is his widow, and is the sole beneficiary under his probated will.

Homer L. Fry was born January 18, 1894.

Appellant had no knowledge of the age of Mr. Fry, nor that premiums were being paid by him until January 14, 1966, on which date it notified the Land Board that credit was due for these premiums and that they should be refunded.

Art. 3.50, Sec. 2, Texas Insurance Code, Vol. 14, V.T.C.S., referred to in Art. 5421m, 16 (B), supra, provides that a group

life insurance must contain the following provision or one just as or more favorable to the policyholder:

"A provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two (2) years from its date of issue;"

By force of Art. 5421m, 16 (B) this provision of Art. 3.50, supra, is incorporated in Art. 5421m 16 (B) and in policies issued thereunder.

The principal question presented is whether under the facts, the incontestable clause prevents appellant from defending this suit on the ground that Mr. Fry was uninsurable because of age when he commenced payment of premiums and when the Master Policy and Certificate No. 3839 were issued.

It is our opinion that neither the policy nor the certificate ever became effective as to Mr. Fry, and that the incontestable clause never became operative.

The policy and certificate exclude coverage of persons over 65 years of age even though they are otherwise eligible under the law.

Appellee does not question this statement, but predicates her right to recover under the incontestable clause.

There is a distinction between contesting the validity of an insurance contract and contesting its coverage, meaning or application.

Here, appellant is not contesting the validity of the Master Policy issued by it. Rather, it is insisting upon observance of its terms and upon compliance with the statute under which it was issued. This is not a contest of the policy within the meaning of the incontestable clause. The following authorities support this conclusion. Mainer v. American Hospital and Life Ins. Co., 371 S.W.2d 717, Tex.Civ.App.

Austin, writ ref. n.r.e., Guardian Life Ins. Co. of Texas v. Galoostian, 155 S.W.2d 396, Tex.Civ.App., Eastland, writ dism. w.o.m.; Southwestern Life Ins. Co. v. Houston, 121 S.W.2d 619, Tex.Civ.App. Fort Worth, writ ref.; Texas Prudential Ins. Co. v. Wiley, 80 S.W.2d 1024, Tex.Civ.App. Beaumont, writ dismissed.

Appellee cites numerous Texas cases which she concedes are persuasive only, not being directly in point. We have considered the holdings in these cases and do not find them sufficiently persuasive to cause us not to follow the principles and decisions noticed above.

Appellee cites Ford v. United Life and Accident Insurance Company, 107 N.H. 114, 218 A.2d 67, and McDaniel v. Insurance Company of Oregon, 243 Or. 1, 410 P.2d 814, as being in point.

In Ford the group creditor insurance policy involved provided that to be eligible the debt insured must be payable before the debtor became 70 years of age. The policy was issued on the mistaken belief that the debtor was 45 rather than 46 years of age. The last installment of the debt actually was scheduled to be paid after the debtor became 70, although not so intended. The Court permitted reformation of the policy to schedule the debt payments based on the true age of the debtor and so as to mature before he reached age 70.

In McDaniel the group creditor insurance policy provided that debtors to be eligible must be of certain age and in "good health," and that the "validity of the policy or of any life insurance claimed hereunder shall not be contestable." Although the debtor was not in good health when the policy was issued, the Court held, in the absence of fraud, it was enforceable.

These cases are, of course, not in point on the facts. Our decision involves a statute and a policy written and issued under authority of the statute. It is distinctive

in this respect and cannot be controlled by decisions not involving similar statutes.

It is our opinion that the provisions as to age appearing in the policy and certificate are clearly authorized by the statute under which they were approved and issued. If, because of the incontestable clause, they are not to be enforced, the statute which authorized them becomes a dead letter and an open invitation to fraud.

Appellee seeks to reform the insurance contract as to its age provisions so as to make it conform to the statute under which it was issued. We overrule this request on the ground that the provisions of the policy as to age were written in accordance with the statute.

The judgment of the trial court is reversed and judgment is here rendered for appellant.