## FRIEZE et al. v. WEST AMERICAN INS. CO.

### No. 14236.

United States Court of Appeals
Eighth Circuit.

April 23, 1951.

Rehearing Denied June 5, 1951.

William H. Burden, Joplin, Mo. (A. L. Shortridge and William O. Russell, Joplin, Mo., on the brief), for appellants.

Karl W. Blanchard, Joplin, Mo. (Seiler, Blanchard & Van Fleet, Joplin, Mo., on the brief), for appellee.

Before COLLET and STONE, Circuit Judges, and DELEHANT, District Judge.

COLLET, Circuit Judge.

Appellee, West American Insurance Company, instituted this action seeking a Declaratory Judgment that a certain automobile insurance policy issued by it to Gerald Forrest and his wife, Dorothy Forrest, had been cancelled. From a judgment holding that the policy had been cancelled this appeal is prosecuted.

Gerald and Dorothy Forrest purchased a used car from a used car dealer in California where they were living. A conditional sales contract was executed by them at the time of purchase which provided that the balance due on the purchase price should be paid in installments, that the automobile should be insured and that the policy of insurance should be delivered to the "seller" (used car dealer). It further provided that in the event of any assignment of the "seller's" interest in the contract, the assignee should be entitled to all of the "seller's" rights and privileges thereunder. The used car dealer, or "seller", assigned its interest in the contract to the Security First National Bank of Huntington Park, California, which Bank was to make the loan to cover the unpaid balance. The Bank did advance the funds necessary to cover the amount due on the purchase and to pay the premium on an insurance policy which included property damage and public liability insurance issued by appellee to Gerald and Dorothy Forrest. The insurance premium was paid directly to the insurance company by the Bank. The policy was issued naming Gerald and Dorothy Forrest, 2777 Willow Place, South Gate, California, where both lived at the time, as the insured, and the Bank as the lien holder on the automobile. That policy was delivered to the Bank and a so-called "certificate" of insurance was delivered to the Forrests. This certificate was a copy of the first page of the policy stating the terms and conditions of the insurance and the coverage under the heading:—"Declarations", but did not con-

tain the conditions relating to the coverage which appeared on the succeeding page of the policy proper. Among those "conditions" was one providing that the policy might be cancelled by either party upon notice given in a specified manner, and, upon cancellation by either, that the unearned premium would be refunded on demand.[1] The policy bore date of July 26, 1948, and by its terms was to cover the period from June 28, 1948, until June 28, 1949. In the latter part of July or the early part of August, 1948, Gerald Forrest drove the automobile from California to Webb City, Missouri, where he remained visiting an uncle until on October 22, 1948, he was killed in an automobile accident in which this automobile and two others were involved. Dorothy Forrest remained in California and had, prior to Forrest's death, instituted divorce proceedings against him. On October 1st, 1948, the Insurance Company mailed a notice of cancellation of the policy to Gerald and Dorothy Forrest at their address appearing in the policy, to-wit: 2777 Willow Place, South Gate, California, and a duplicate of that notice to the Security First National Bank. These notices were in the following form:

"West American Insurance Company, Los Angeles, California, hereby gives you written notice in accordance with the Policy Conditions of the cancellation of its Automobile Policy No. 121637 issued through its San Francisco Agency to Gerald Forrest and Dorothy Forrest. By virtue of this notice, as issued to you, the policy will be cancelled and all liability under said Policy will cease at and from 12:01 A.M.

standard time October 7, 1948, without further notice. If the premium has been paid, the excess of paid premium above the pro rata premium for the expired term, if not tendered to you herein, will be refunded on demand."

Post office receipts showing the mailing of both notices were obtained at the time of mailing and were introduced in evidence at the trial. There is no evidence that Forrest, who was in Missouri, knew anything about either of these notices. After the death of Gerald Forrest, on the demand of the Bank, the unearned premium was paid to it and credited to Forrest.

In the automobile accident in which Gerald Forrest was killed, an occupant of another automobile was also killed and several others were injured. Arkley Frieze was appointed administrator of the estate of Gerald Forrest in Jasper County, Missouri, and actions have been filed against him as administrator of Forrest's estate in the Missouri State Courts for damages resulting from the accident.

The trial court made findings of fact to the effect that the policy had been cancelled on October 7, 1948, in accordance with the provisions of the contract of insurance between the Insurance Company and the Forrests, and entered its conclusion of law and formal judgment that the Insurance Company was not responsible under the policy subsequent to October 7, 1948. It is from that judgment that this appeal is prosecuted by Arkley Frieze as Administrator of Gerald Forrest's estate.

Appellants contend that under the law of California it was the Appellee Insurance

---

[1]. "9. Cancellation. This policy may be canceled by the Named Insured by surrender thereof or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than five (5) days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

"If the Named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to the Named Insured."

Company's duty to deliver the insurance policy or a true copy thereof to Gerald Forrest and Dorothy Forrest, and that since it failed to do so but delivered only the "certificate" of insurance to them, that appellee cannot rely on the policy provision for cancellation which did not appear in the certificate. In the same connection it is argued that the "certificate" constituted the only agreement between the Forrests and the Insurance Company and since that "certificate" contained no provision for cancella-tion, no such right existed. In support of these contentions we are referred to several provisions of the California Insurance Code,[2] (which do not appear to have been urged upon the trial court).

■ The evidence justifies the finding of the trial court that: "Gerald and Dorothy Forrest consented and knew that the policy of insurance for which they made application to plaintiff, would, when issued, be delivered to Security First National Bank,—".

2. Insurance Code of the State of California Chapter 145, Stats.1935, adopted May 7, 1935.

"Section 16, General Provisions:
" 'Shall' and 'may.' As used in this code the word 'shall' is mandatory and the word 'may' is permissive, unless otherwise apparent from the context."

Section 383.5, Chapter 4, Article 1. Insurance Code of the state of California, 1935, as added by Stats.1941, Chapter 116, Amended by Stats.1945, Chapter 901, is as follows:

" 'Document,' as used in this section, means a policy or a certificate evidencing insurance under a master policy. Such policy or certificate shall conform to Section 381 and shall segregate the premiums charged for each risk insured against. Such a certificate, in lieu of specifying the risks insured against, may designate them by name or by description.

" 'Owner' as used in this section means any person who is named as an insured in such contract of insurance or document, or in a loss payable clause therein, and, whether or not he is named therein, the vendee, pledgor, or chattel mortgagor of a motor vehicle where insurance contracts subject to this section are procured with respect to the motor vehicle by or on behalf of either party to the purchase, pledge, or mortgage.

"(Necessity for writing.) Every contract of insurance against hazards incident to ownership, maintenance, operation and use of motor vehicles shall be embodied in a document.

"The original or a true copy of such document shall be delivered to each owner. Where it is executed by an insurer, the insurer shall deliver the original or a true copy:

"(a) To the agent or broker who negotiated the insurance, for delivery to each owner of the motor vehicle, or

"(b) To each owner of the motor vehicle.

"The agent or broker receiving such original or copy shall deliver one to each owner. Where coverage subject to this section is evidenced by a document executed by an agent licensed under Article 1, Chapter 5, Part 2, of this division, and not by an insurer, the agent and not the insurer is responsible for delivery of the original or a true copy to each owner.

"(Suspension, etc., of licenses.) The licenses of any agent or broker or the certificate of authority of any insurer found by the commissioner after hearing to have violated this section may be suspended or revoked.

"(Purpose of section.) The purpose of this section is to prevent fraud or mistake in connection with the transaction of insurance covering motor vehicles and in furtherance of that purpose the commissioner may make reasonable rules and regulations therefor. (Added by Stats. 1941, ch. 116, § 1, p. 1154.)"

Section 380, Chapter 4, Article 1. Insurance Code of the State of California as amended by Stats.1943.

"Policy defined. The written instrument, in which a contract of insurance is set forth, is the policy."

Section 381, Chapter 4, Article 1. Insurance Code of the State of California as amended by Stats.1943.

"Contents. A policy shall specify:
"(a) The parties between whom the contract is made.
"(b) The property or life insured.
"(c) The interest of the insured in property insured, if he is not the absolute owner thereof.
"(d) The risks insured against.
"(e) The period during which the insurance is to continue.
"(f) Either:
"(1) A statement of the premium, or
"(2) If the insurance is of a character where the exact premium is only determinable upon the termination of the contract, a statement of the basis and rates upon which the final premium is to be determined and paid."

They agreed to that in the Conditional Sale Contract. But we are unable to find in the record any direct evidence supporting the conclusion of the trial court "that they would be bound by the terms of any such policy when issued, as to insurance coverage made known to them by Exhibit 'J'." (Exhibit "J" is the so-called certificate or copy of the Declarations which appear on the first page of the policy.) In the absence of the statutory provisions noted in the margin we might readily agree that the Forrests' agreement evidenced by the Conditional Sales Contract that the policy should be delivered to the Bank would justify the inference that they also agreed to be bound by the terms of such policy as might be delivered to the Bank. But it seems that the State of California has adopted as the public policy of that State the requirement that the document constituting the original policy or a true copy thereof shall be delivered to each "owner" in order that fraud or mistake in connection with the transaction of insurance covering motor vehicles be prevented. See Sec. 383.5 supra. If the statutory requirement that a true copy of the policy be delivered to the insured could be waived (and there is no issue of such waiver involved), there is no evidence that the Forrests agreed that neither the policy nor a copy thereof be delivered to them. And the same section of the statute leaves no doubt that the term "owner" must include not only the named insured but also the mortgagor. Or, reversing the parties for illustrative purposes, the statute requires—that not only the mortgagor Bank but also the named insured—the Forrests—must be given an original policy or a true copy thereof. It is conceded that this was not done, the certificate or copy of the Declarations of the policy delivered to the Forrests not being a true copy and not containing the "condition", vital in this case, which authorized cancellation and prescribed the procedure therefor.

The appellee seeks to avoid the foregoing conclusion by construing the policy in this case as a "master" policy and the certificate or copy of the Declarations of the policy in this case as a "certificate" within the meaning of that term as it is used in the above quoted definition of "document" in Section 383.5 supra. But clearly the policy in this case was not a "master policy" and the so-called certificate in this case was therefore not such a "certificate evidencing insurance under a master policy", as the statute required.

But what must the effect be of the failure to comply with the requirement of the statute? The authorities cited by counsel are not helpful in determining that question. We are compelled to reach our own conclusion as to the proper application of the California statute without the guidance of any authority reflecting the judgment of the California courts on the question.

■ If, as the statute clearly states, the purpose of the requirement that the original policy or a true copy thereof be given the Forrests was to prevent fraud or mistake, we must reach the conclusion that a cardinal purpose of the statute was to acquaint the assured with all of the terms of the contract of insurance as a necessary incident to the prevention of fraud or mistake concerning the coverage and the conditions attached to the coverage. It should follow, we believe, that the entire contract of insurance must be included in the "true copy" required, and that one who has failed to follow the statutory requirement and acquaint another party to the contract with the terms of the contract in the manner required by the California statute may not enforce against the other a condition not disclosed in the manner required by the statute.

■ We do not construe the statute to impose a penalty or sanction upon the insurer for failure to comply with its terms to an extent beyond that necessary to the accomplishment of the purpose of the statute, i.e., to prevent one party from enforcing against the other a qualifying condition of which the other party was not apprised. But to accomplish the purpose of the statute we deem it essential that the courts should not permit the enforcement of a material provision of a contract by one party thereto, and favorable to such party, which has not been disclosed to the other party in

the copy of the agreement the statute requires be furnished the other party.

To illustrate: If the copy of the contract or policy furnished the Forrests had contained the "conditions" and provisions relating to cancellation here involved but there had been a provision in the original policy to the effect that the insurance should not apply if and when an accident occurred while the driver was intoxicated which was not in the copy furnished the Forrests, we do not construe the statute as imposing as a penalty for not incorporating the driving-while-intoxicated provision in the copy, a denial to the insurer of the right of cancellation in the manner provided in the copy. Illustrating further: If the copy furnished the Forrests had provided that the period covered should be from June 28, 1948, until June 28, 1949, and the original policy provided for coverage from June 28, 1948, until January 1, 1949, and the collision from which the cause of action arose occurred on October 22, 1948, we do not construe the statute to require the courts to deny to the insurer any rights or defenses given it by the terms of the copy furnished the Forrests merely because that copy was not a true copy. Under those hypothesized circumstances, the discrepancies between the original policy and the copy would be wholly immaterial.

For the reasons stated, we must disagree with the trial court's conclusion that Gerald and Dorothy Forrest were bound by the "conditions" of the policy providing for cancellation of the policy in the manner provided for in those "conditions".

We have not been referred to any California statutory provision for the cancellation of policies such as this in the manner attempted. And there being no enforceable contractual provision therefor, the judgment of the trial court that the policy had been cancelled prior to the accident on October 22, 1948, must be reversed and the cause remanded with directions to the trial court to enter its Declaratory Judgment to the effect that the policy of insurance was in full force and effect at the time of the accident on October 22, 1948.

The remaining questions presented by appellants need not be considered.

Reversed and remanded with directions.