Argued January 5, affirmed in part, reversed in part February 9,
petition for rehearing denied February 23, 1966

# McDANIEL ET AL v. INSURANCE COM-
# PANY OF OREGON ET AL

410 P. 2d 814

*Ben Day,* Medford, argued the cause for appellants. On the briefs were Day and Courtright, Medford.

*Hugh B. Collins,* Medford, argued the cause and filed a brief for respondent Insurance Company of Oregon, and *Robert Dickey,* Medford, argued the cause and filed a brief for respondent Dean and Taylor Pontiac Company.

Before MCALLISTER, Chief Justice, and PERRY, GOODWIN, DENECKE and SCHWAB, Justices.

SCHWAB, J. (Pro Tempore).

This is an action by a surviving husband, individually and as administrator, against an automobile agency and credit life insurer on a policy issued to the deceased spouse. The court sitting without a jury found for all defendants on the ground that the plaintiff McDaniel had concealed the state of his wife's health at the time the policy was issued.

In May of 1959 the defendant Insurance Company of Oregon issued to the defendant Dean and Taylor Pontiac Company a Group Creditors Life Policy. The policy, subject to the payment of the premium in each instance, insured the life of certain debtors of Dean and Taylor. The policy further provided that any pay-

ment by the insurance company under the policy would be to the automobile agency for application to the indebtedness of the insured debtor. The group policy provided that debtors eligible were "each natural person between the ages of 18 and 65 inclusive who is in good health and becomes indebted to the creditor * * *." It also declared, "the validity of this policy or of any life insurance claimed hereunder shall not be contestable."

On June 29, 1960, McDaniel and his now deceased wife, Mary, purchased an automobile from Dean and Taylor. Included in the contract price of the automobile was a $101.62 premium charge for credit life insurance. Thereupon, Dean and Taylor, pursuant to its agreement with the Insurance Company of Oregon, issued a certificate of insurance in the name of the Insurance Company of Oregon naming Mary McDaniel as the insured debtor. Mrs. McDaniel was a diabetic, ill at the time of the purchase, and died 52 days later on August 20, 1960. Mr. McDaniel knew, prior to the purchase of the automobile, that Mrs. McDaniel was a diabetic. The death certificate stated that the cause of death was nephrosis with uremia and that diabetes mellitus was a significant condition contributing to death, but not related to the terminal disease or condition given as the cause of the death.

The certificate of insurance issued to Mrs. McDaniel states, "This Certificate is subject to all the terms, limitations and conditions of the Group Creditor Life Policy issued to the Creditor * * *. This insurance will be issued only to such Eligible Debtors who are * * * in sound health."

Upon Mrs. McDaniel's death the Insurance Company of Oregon disclaimed liability. When Mr. Mc-

Daniel failed to continue the monthly payments on the purchase contract, Dean and Taylor repossessed the automobile. Following the repossession the plaintiff, individually and as administrator of the estate of Mary McDaniel, deceased, brought an action against both defendants alleging that at the time of Mrs. McDaniel's death there was a balance due on the automobile contract of $3,176.98 which the Insurance Company of Oregon wrongfully refused to pay, and alleging that Dean and Taylor Pontiac Company though requested to do so had not collected this amount or any portion thereof from the Insurance Company of Oregon and had wrongfully repossessed the automobile.

The various arguments advanced by Insurance Company of Oregon in support of the judgment in its favor resolve themselves into two propositions.

(1) Dean and Taylor Pontiac Company, and not the decedent's estate, was the only party with a right of action on the policy.

(2) Since Mary McDaniel was not in good health at the time the policy was issued, the coverage failed to attach.

The insurance company relies upon the case of *Murray v. Life Ins. Co. of Georgia,* 107 Ga App 545, 130 SE2d 767, which holds that the legal and beneficial interest in the credit life insurance contract there considered was vested in the creditor and not the debtor. The holding was based on the fact that "coverage was extended upon the *creditor's* application, in consideration of the *creditor's* payment of the premiums therefor and was payable to the *creditor*"; and that the plaintiff, by paying the premiums himself, was merely furnishing collateral in the form of insurance as "a

necessary incident to the obtaining of the loans." 130 SE2d at 769. In the case at bar the acquisition of credit life insurance was not a prerequisite to obtaining the loan. The president of the automobile agency made this clear when questioned by counsel for plaintiff.

"Q Now Mr. Taylor, on car sales, do you require insurance on the life of a purchaser when a car is being bought on credit?

"A It isn't a requirement. It is strictly we'd like to sell it. We sell all we can sell.

"Q But it is not in any sense a requirement?

"A No. Lots of people don't even take it.

"Q You are doing this then as a—are selling this insurance as a service to the customer and for what profit you can get out of that sale of the insurance?

"A Correct."

The Georgia court, in *Betts v. Brown,* 219 Ga 782, 136 SE2d 365, held that when a policy was voluntarily purchased at the option of the deceased debtor and an individual certificate was issued to him, his personal representative and not the creditor had the right to bring an action on the policy, saying:

"* * * If the payment were with the proceeds of credit life insurance the debtor himself procured, independently of his creditor, or with the proceeds of a pre-existing policy of insurance owned by him and assigned to his creditor, there would be no question but what the payment was by the insured. We see nothing which would require a different result here where the debtor chose a third authorized arrangement * * *.

"* * * Although, in accordance with arrangements made previously by Betts [the insured] and the bank, the two insurance companies acted as the conduit for the payment of the indebtedness, to us it

is inescapable that payment was made by Betts. He literally paid with his life." 219 Ga at 786-87, 136 SE2d at 369.

■ Here, Mrs. McDaniel obtained a credit life insurance policy insuring her life. She was not required to do so. The provision that Dean and Taylor Pontiac Company was to receive the proceeds did not make it the sole party with a beneficial interest. The facts of the case at bar are analogous to those of the *Betts* case, not the *Murray* case.

■ The contention of the defendant insurance company that the coverage of the policy failed to attach because Mrs. McDaniel was not in good health at the time of the issuance of the certificate is not supported by the weight of authority. The policy in question contained an incontestability clause effective on the policy date. In policies containing

(1) a clause stating that the policy cannot go into force unless the insured is in sound health upon the policy date, and

(2) an incontestability clause that gives the company a period of time to ascertain the truth of the declarations made by the applicant,

the defense of unsound health at the policy date is barred after the expiration of the stated period. 1 Appleman, Insurance Law and Practice § 333 and citations therein; 29A Am Jur, Insurance § 1114.

There is a split of authority as to whether the defense of fraud on the part of the insured as to the condition of his health may be raised as a defense when the incontestability clause takes effect from the date of the policy. See discussion and cases cited in *Pacific Mut. Life Ins. Co. v. Strange*, 223 Ala 226, 135 So 477.

We need not now take a position on that issue for there cannot be fraud without misrepresentation or concealment. Concealment is the designed and intentional withholding of any fact material to the risk which the insured in good faith should communicate to the insurer. 12 Appleman, Insurance Law and Practice § 7271.

There is nothing in the record from which it can be inferred that Mr. McDaniel or his deceased wife misrepresented the state of her health or knew that her physical condition was material. No written application was required. The three witnesses who testified, McDaniel, Taylor and Gustafson, said nothing from which such an inference could be drawn. McDaniel denied knowing or being told that his wife's physical condition was relevant to the issuance of the policy. Gustafson, the salesman who handled the automobile purchase, said he never talked to Mrs. McDaniel and did not recall discussing health as a factor with Mr. McDaniel. The only other witness, Taylor, the president of the automobile agency, affirmatively testified that health was not a consideration in the issuance of creditor's life insurance and was not discussed. When questioned about his conversations with a man he identified as the state of Oregon sales representative for the defendant Insurance Company of Oregon, he testified:

"Q And did he ever request that you have health insurance—I don't mean health insurance. I mean health examinations of the prospective insureds?

"A Never.

"Q Did he ever require you to question the prospective insureds concerning their health?

"A No."

He further testified:

"Q  Did either Mr. or Mrs. McDaniel sign any written statement regarding her health?

"A  To my knowledge, nothing.

"Q  In the normal course of your business would they have been asked anything about it?

"A  Their health?

"Q  Yes.

"A  To this day we still don't ask them about their health.

"*  *  *  *  *

"Q  Did you have any discussion about Mrs. McDaniel's health with Mr. McDaniel?

"*  *  *  *  *

"A  Not to Mr. McDaniel, never.

"*  *  *  *  *

"Q  Mr. Taylor, prior to the time you issued the insurance to Mr. McDaniel, did he inform you at any time, to your recollection, that Mrs. McDaniel was suffering from nephrosis with uremia or diabetes mellitus?

"A  I never heard of any of those terminologies and I'm sure we have sold many diabetics insurance because we have never asked them. There is no reason for us to.  *  *  *  And I might say I don't think it made any difference because it is not on our questionnaire. We don't ask them or we don't go in on a health kick.

"Q  If you had known she was suffering from diabetes you would have still sold the insurance?

"A  I'll say honestly I have never in my life turned anybody down on a policy on any conditions, because there are no conditions as far as we are concerned."

Plaintiff, Robert J. McDaniel, as administrator of the estate of Mary C. McDaniel, was entitled to a

judgment in the amount of $3,176.98 plus interest from September 12, 1960, and an appropriate attorney fee. We find nothing in the record stating a cause of action in Robert J. McDaniel as an individual. On oral argument before this court plaintiff conceded that no cause of action lay against the defendant Dean and Taylor Pontiac Company.

Affirmed as to the judgment in favor of both defendants against Robert J. McDaniel as an individual; affirmed as to the judgment for defendant Dean and Taylor Pontiac Company against Robert J. McDaniel as administrator of the estate of Mary C. McDaniel. Reversed and remanded as to the judgment for defendant Insurance Company of Oregon against Robert J. McDaniel, as administrator of the estate of Mary C. McDaniel.

Affirmed in part; reversed in part.