CAROL B. LECKER, Plaintiff-Appellant, *v.* GENERAL AMERICAN LIFE INSURANCE COMPANY, Defendant-Appellee.

NO. 5446

AUGUST 27, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI, OGATA and MENOR, JJ.

OPINION OF THE COURT BY OGATA, J.

The plaintiff, Carol B. Lecker, a widow, appeals from an adverse order of the trial court granting the motion filed pursuant to H.R.C.P. Rule 56, by defendant, General American Life Insurance Company, for a summary judgment. The trial court by this order implicitly found that, based upon the pleadings, deposition, answers to interrogatories, and affidavit on file in this case, there was no genuine issue of material facts, and that defendant was entitled to judgment upon the record. We reverse and remand this case for further proceedings not inconsistent with this opinion.

Essentially, this case is a claim for an accidental death benefit under a group insurance plan. On May 4, 1971, Joseph Lecker, Jr., died as a result of an industrial accident within the course and scope of his employment. On that date and for sometime prior thereto, defendant, a Missouri insurance company, which had been registered with the Insurance Commissioner of Hawaii to do business in this state, issued a policy of group insurance and contract to the Trustees of the Hawaii Shopmen's Health and Welfare Fund for the benefit of members and dependents of members of the Hawaii Shopmen's Union, Local 803, AFL-CIO. Mr. Lecker, Jr., was, at the time of his death, the president and a member in good standing of Local 803, and he was covered under the group insurance issued by the defendant. In fact, plaintiff as a beneficiary under the policy in question was paid by defendant $10,000 for the death of Mr. Lecker, Jr. The present controversy revolves around a claim that plaintiff is entitled to receive from the defendant an additional sum of $10,000, for accidental death benefit, based upon the booklet-certifi-

cate, which was prepared and issued by the defendant to each group member in accordance with the terms of the master policy issued by defendant to the policy holder, Trustees of the Hawaii Shopmen's Health and Welfare Fund, as well as under the provisions of HRS § 431-518.

The single basic question presented for our consideration by this appeal relates to the legal effect of the provisions contained in the booklet-certificate which ostensibly granted to the beneficiary a greater insurance coverage with respect to accidental death benefits than under the printed policy of group insurance, which limited and excluded accidental death benefits when death results from accidental bodily injury arising from occupational hazards. In the resolution of this legal problem, we do not have a situation where extrinsic evidence is necessary or required for the consideration and deliberation by a trier of fact to correctly determine which of the terms shall govern and control in settling this issue — those in the booklet-certificate as contended by the plaintiff, or those in the policy itself as contended by the defendant. Under the circumstances, we do not see, at this stage, any factual issues to resolve this key question. Our inquiry is, therefore, concerned with and limited to the consideration of the substantive law of construction of insurance contracts, which is simply one of law. *Retherford v. Kama*, 52 Haw. 91, 470 P.2d 517 (1970); *Elmhorst v. Prudential Ins. Co.*, 48 Haw. 121, 395 P.2d 683 (1964); *Territory v. Arneson*, 44 Haw. 343, 354 P.2d 981 (1960); *Couch on Insurance*, § 15-3.

The group policy, consisting of 41 pages, including the application, was issued by the defendant to the policyholder, Trustees of the Hawaii Shopmen Health and Welfare Fund, and only the policyholder had convenient access to this document. In one of its printed pages, it explicitly provided by way of limitations and exclusions that benefits shall not be payable for an accidental death which arises out of or is contributed to in any way by any of the following:

(1) bodily or mental condition or sickness existing at the time of or at any time previous to the accident (or any medical or surgical treatment thereof) whether or not such condition or sickness was aggravated or caused to

recur by the accident;

(2) suicide (or any attempt thereat) while sane or insane; or intentionally self-inflicted injury;

(3) ptomaine or bacterial infection other than a pyogenic infection of and through a visible accidental cut or wound;

(4) act or incident of war, declared or undeclared;

(5) participation in, or in consequence of having participated in, the commission of an assault or felony;

(6) accidental bodily injury arising out of or in the course of any occupation or employment for compensation, profit or gain.

The defendant now contends and urges that Mr. Lecker, Jr., died as a result of an accidental bodily injury arising out of or in the course of an occupation or employment for compensation, profit or gain, as set forth in limitation and exclusion six of the limitations and exclusions contained in the policy, and, therefore, his widow, the plaintiff, is not entitled to recover. The policy further included under one of its general provisions a paragraph reading as follows: "The Company will issue to the Policyholder for delivery to each employee insured under this policy a certificate of insurance setting forth a *statement of the rights and benefits to which such employee is entitled,* to whom payable and such *limitations* and requirements in this policy as may pertain to the insured individuals." (Emphasis added.)

Since the contract of insurance is governed by Hawaii law, such a provision must have been inserted into the policy to comply with HRS § 431-518, which reads as follows:

§ 431-518 Certificates. In group disability insurance policies there shall be a provision that the insurer shall issue to the employer, the policyholder, or other person or association in whose name such policy is issued, for delivery to each insured employee or member, an individual certificate setting forth in summary form a *statement of the essential features of the insurance coverage,* and to whom the benefits thereunder are payable. If family members are insured, only one certificate need be issued for each family. . . . (Emphasis added.)

The certificates mentioned in the policy and in HRS § 431-518, were prepared by the defendant and issued to the policyholder in the form of booklet-certificates. The policyholder in turn distributed each of these documents to each member insured by the group policy, and Mr. Lecker received one of these booklet-certificates. The booklet-certificate contained a general summary of the group policy in language understandable by a layman. On the page designated "Schedule Page" it outlined the coverage provided by the policy as follows:

SCHEDULE PAGE

The Amounts Shown Below Are the Maximum Amounts Payable as Subsequently Explained:

EMPLOYEE BENEFITS

LIFE INSURANCE ................................ $10,000.00
ACCIDENTAL DEATH AND
   DISMEMBERMENT INSURANCE:
     Maximum Amount ........................ 10,000.00

If you are less than age 65 on the date you become insured under the Policy Contract, your amount of insurance will be reduced 50% on your 65th birthday. If you are age 65 or over on the date you become insured under the Policy Contract, your amount of insurance shall be 50% of the otherwise applicable amount.

WEEKLY INDEMNITY INSURANCE:
Maximum Weekly Rate of Benefit.......... 50.00
Day Benefits Commence in each Disability Period:
   Due to accidental bodily injury — first day of disability
   Due to bodily or mental infirmity — eighth day of continuous disability
Maximum Payment Period — 26 weeks

If the number of days of disability is not an exact multiple of seven, the amount of benefits for each day shall be one-seventh of the Weekly Rate of Benefit.

Further the booklet-certificate contained provisions explaining to the insured in what situations accidental death benefits would not be payable. On the last page of the booklet-certificate it informed the insured as follows:

LIMITATIONS

No more than the Maximum Amount will be paid for all losses sustained as a result of any one accident whether or not such losses occur simultaneously or in succession during the ninety-day period after the accident.

No payment is made for losses which arise out of or are contributed to by any of the following even though the proximate and precipitating cause of the loss is accidental bodily injury:

(1) bodily or mental condition or sickness existing at the time of or at any time previous to the accident (or any medical or surgical treatment thereof) whether or not aggravated or caused to recur by the accident;

(2) suicide (or any attempt thereat) while sane or insane; or intentionally self-inflicted injury;

(3) ptomaine or bacterial infections other than a pyogenic infection of and through a visible accidental cut or wound;

(4) act or incident of war, declared or undeclared;

(5) participation in, or in consequence of having participated in, the commission of an assault or felony.

The five limiting provisions in the booklet-certificate omitted, and did not include therein, the additional exclusionary condition set forth in the printed policy to-wit: "accidental bodily injury arising out of or in the course of any occupation or employment for compensation, profit or gain." Plaintiff contends and argues that since the insured was not furnished with a copy of the policy, but only with a copy of the booklet-certificate, as required by the terms of the policy, as well as by the specific provisions of HRS § 431-518, and since the booklet-certificate did not contain the exclusionary factor that when death shall result to the insured because of injuries received during the scope of his employment, that the circuit court erred in granting defendant's motion for summary judgment.

HRS § 431-446 provides that "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement, or

application attached to and made a part of the policy.'' We are further aware and recognize that the policy involved in this controversy specifically provides that it and the policyholder's application, together with the individual applications, if any, shall constitute the entire contract between the insurer and the insureds. However, in the construction of such contracts to determine the rights, benefits and liabilities of the parties, courts will give proper consideration and effect to the certificates prepared by the insurer and which are issued and delivered to the insureds, especially where the group policy itself and the applicable statutory provisions require that such certificates contain a summary of the essential features of the insurance coverage. *Exstrum v. Union Casualty & Life Insurance Co.,* 167 Neb. 150, 91 N.W.2d 632 (1958); *Thieme v. Union Labor Life Ins. Co.,* 12 Ill. App. 2d 110, 138 N.E.2d 857 (1956); *Riske v. National Casualty Co.,* 268 Wis. 199, 67 N.W.2d 385 (1954); *Metropolitan Life Ins. Co. v. Whitler,* 172 F.2d 631 (7th Cir. 1949); *John Hancock Mutual Life Ins. Co. v. Dorman,* 108 F.2d 220 (9th Cir. 1939); *Parks v. Prudential Ins. Co.,* 103 F. Supp. 493 (E.D. Tenn. 1951).

Thus, in *Riske,* the Wisconsin supreme court was faced with an identical problem concerning coverage under a group insurance where the certificate issued to the insured defined the term dependent to mean the spouse and the unmarried child or children of the insured and the master policy defined the same term to mean only the wife of the insured. Wisconsin also had a statute containing provisions substantively similar to HRS § 431-518. The court said in *Riske* that:

Under the circumstances before us we must hold that the learned trial court was in error in ignoring the certificate relied upon by the appellant. We need not hold that it has become a part of the insurance contract contrary to the declarations of both policy and certificate, but we have no doubt that the certificate, issued under the representations of the policy itself to an insured who has contributed to the premium, effectively estops the respondent from showing that the coverage, conditions and limitations of the policy are different from those stated in

the certificate and which the policy proclaims will be found there. We hold, therefore, that, for the purposes of this action, appellant's spouse is her dependent and she is entitled to the benefits which the policy provides for the disability of one. 268 Wis. 207, 67 N.W.2d 389.

Although in *Riske,* the insured had herself actually contributed toward the payment of the premium, we do not regard this feature as of any consequence. Whether in this case the premium was paid by the employer or by someone else, it would seem to us that consideration moved from the insured. It was not a gift from the employer, but rather bargained for compensation.

Because the booklet-certificate in describing the plan of insurance to each insured expressly states that benefits are subject to the applicable terms, conditions and limitations in the policy, the defendant claims that all employees covered by the group policy are put on notice that they must consult both of these documents, the booklet-certificate and the policy, to determine the full extent of their coverage. However, the defendant did not issue and deliver the master policy to the insured employees, other than to the policyholder. There was no explicit direction to the insured contained in the booklet-certificate that each insured should read the policy by obtaining it from the policyholder. All that the insured received from the defendant was a copy of the booklet-certificate. Under these circumstances, we think that the insured is entitled to rely on the booklet-certificate, which HRS § 431-518 requires the insurer to furnish to an insured so that the insured may be informed of the essential features of his insurance coverage. The defendant, having misinformed the insured of the limitations affecting such coverage, through use of the booklet-certificate is, therefore, estopped from asserting a policy exclusion not shown or otherwise indicated in the booklet-certificate as a basis for nonpayment of accidental death benefits. A contrary view would render nugatory the effectiveness of HRS § 431-518, insofar as it requires that the individual certificate contain a summary of the essential features of the insurance coverage *Riske v. National Casualty Co., supra; Bauer v. Insurance Company of North*

632

*America*, 351 F. Supp. 873 (E.D. Wis. 1972).

From any reasonable point of view, the impact of the omission from the certificate prepared by the insurer and relied upon by the insured of an important condition or limitation which would affect insurance coverage would be just as misleading and deceiving to the insured as where positive statements in such certificate vary from those contained in the policy. We would not, therefore, treat these two situations differently by not applying to the former a principle which is applicable to the latter. It seems to us to be the better view, and which we adopt, that a significant policy exclusion which is not specified in the individual certificate should not be enforced. *Bauer v. Insurance Company of North America, supra; Lewis v. Continental Life and Accident Co.*, 93 Idaho 348, 461 P.2d 243 (1969); *Riske v. National Casualty Co., supra*. Since the substantive question of law is answered against the motion, and in favor of the plaintiff, we reverse and remand this case for further proceedings not inconsistent with this opinion.

*Raymond Lee* for plaintiff-appellant.

*Joseph T. Kiefer (Carlsmith, Carlsmith, Wichman* and *Case* of counsel) for defendant-appellee.