Argued May 10, affirmed September 6, 1974

HAYES TRUCK LINES, INC., *Respondent, v.*
INVESTORS INSURANCE CORPORATION,
*Appellant.*
525 P2d 1289

*John R. Bakkensen,* Portland, argued the cause for appellant. With him on the briefs were Miller, Anderson, Nash, Yerke & Wiener, Portland.

*Walter H. Evans, Jr.,* Portland, argued the cause for respondent. On the brief were William D. Peek, and Evans & Peek, Portland.

Before O'CONNELL, Chief Justice, and DENECKE,[*] HOLMAN, HOWELL and BRYSON, Justices.

BRYSON, J.

Plaintiff, assignee of the estate of Sidney M. Hayes, brought this action to recover the proceeds of a policy of group credit life insurance issued by defendant on the life of plaintiff's deceased president, Sidney M. Hayes. The trial court sitting without a jury awarded judgment to plaintiff in the sum of $8,016.64, together with attorney's fees. Defendant appeals.

Credit life insurance is a relatively new form of group insurance in which there are three principal parties: the insurer; the creditor and policyholder-beneficiary; and the insured, debtor. In a typical

---

[*] Denecke, J., did not participate in this decision.

credit life insurance transaction an insurance company issues to a retail seller, lender or other creditor a master policy of life insurance. Upon the occurrence of a credit transaction, the debtor, either at his option or at the insistence of the creditor, is charged a predetermined premium as set by the Oregon Insurance Commissioner and receives a certificate of life insurance stating that the debtor's life is insured under the master policy for an amount equal to the declining balance of the debt. If the debtor dies before the debt is paid, the policy proceeds are applied in satisfaction of the debt.[1]

The credit life insurance transaction in the present case varied somewhat from this basic pattern. On March 11, 1968, plaintiff executed a lease and option to purchase (the security agreement) with Northwest Acceptance Corporation, hereinafter NAC, covering commercial trucks purchased from Automotive Equipment Company. Plaintiff's president and principal shareholder, Sidney Hayes, signed a "guarantee" clause in the lease-option. Plaintiff corporation was undercapitalized and NAC required the guarantee agreement by the officers and credit life insurance on each of the officers' lives. NAC agreed that they would obtain the credit life policies and add the premium cost to the lease-option indebtedness.

At that time, NAC had not been issued a master policy of credit life insurance by defendant. A master life policy allows the creditor to issue certificates of credit life insurance to the creditors and debtors on a particular transaction. Defendant subsequently issued

---

[1] See generally, 1 J. Appleman, Insurance Law and Practice Supp § 20 (1974); Eugster, *Group Insurance: Agency Characterization of the Master Policy-holder,* 46 Wash L Rev 377 (1971).

such a master policy to NAC. At the request of NAC, William Preble, a general agent for defendant, issued the certificate of credit life insurance on the life of Sidney Hayes showing NAC as the beneficiary. This is the policy involved in this litigation.

The Hayes certificate of insurance, received in evidence, shows it was issued on general agent Preble's master policy number 538 in the amount of $9,250 for 60 months at a premium charge of $277.50 with NAC as the creditor-beneficiary and Hayes as the insured debtor. After charging the premium cost to plaintiff's lease-option, NAC paid defendant the $277.50 premium, which defendant accepted. Subsequent to Hayes' death the defendant tendered the premium back to NAC but NAC refused the tender. Plaintiff corporation paid off the lease-option balance to NAC and succeeded NAC as beneficiary under the insurance policy.

Preble testified that he was a general agent for defendant and held the master policy under which Hayes' certificate of life insurance was issued. The record discloses he was paid a commission on the premium collected.

Hayes died on November 2, 1968, from an illness he was aware of at the time he signed the lease-option and at the time the certificate of insurance was issued. NAC filed its "Claimant's Proof of Death" as to Sidney Hayes on November 2, 1968, and requested payment of $8,016.64, the balance of the lease-option debt. By letter of February 18, 1969, defendant denied the claim because Hayes was not "in sound health" at the time of issuance of the certificate of insurance.

Defendant on appeal contends (1) "* * * no policy of credit life insurance had been issued by de-

fendant on the life of Hayes. Although the existence of such a policy was evidenced by the home office copy and the creditor's copy of a certificate referring to insurance on the life of Hayes, this certificate was *not in itself* a contract of insurance" (original emphasis); (2) if there was a master policy of insurance, Hayes was not covered because (a) he was not in sound health; (b) Hayes was "not an eligible debtor as required by their master policy" because he was not "in sound health at the time the policy was purportedly issued"; (c) plaintiff's action was barred by the three-year period of limitations provided in the specimen of master policy (Exhibit 11); and (d) there can be no attorney fee awarded under ORS 743.561 (1) "because no policy of insurance was issued by defendant on the life of Hayes."

The following facts are important to the decision of this case. There were two types of insurance issued by defendant in this case: (1) the *master policy,* issued to its general agent Preble, which the creditor, NAC, and the debtor, plaintiff or Sidney Hayes, guarantor, never saw or new the terms of; and (2) the *certificate of insurance* issued and delivered by the general agent Preble to the creditor-beneficiary, NAC, which advised that insurance was issued on the life of "Insured-Debtor Sidney Hayes," showing the "Group Number," "Contract Date," "Insured's Contract Balance," "Monthly Payment," "Premium," "Contract Term Mos.," "Age" (of Hayes), and "Creditor Northwest Acceptance Corporation." This *certificate,* as distinguished from the *master policy,* shows none of the conditions such as "DEBTORS ELIGIBLE—Any natural person who is in sound health * * *."

The evidence conclusively shows that the general

agent Preble knew nothing of Hayes' health condition and made no inquiry thereof or asked Hayes to sign an application for insurance. Further, the agent failed to ask if Hayes was the principal debtor to NAC and failed to inquire if Hayes was a guarantor to the lease-option. The defendant received a "Home Office Copy" of the certificate of insurance when it was issued, accepted the premium and made no inquiry as to whether Hayes was an "eligible debtor" in sound health. The president of defendant testified that

"A. * * * [T]he credit insurance policy is not underwritten. We don't require evidence of insurability * * *.

"* * * * *.

"Q. But your agents goes ahead and issues a policy to people who are not of sound health and not obligors, and the person who is insured and who pays the premium for this when he repays his loan doesn't know that he wasn't eligible unless he dies?

"A. He should have known he wasn't eligible.

"Q. How would he know?

"A. He would know at the time the insurance was issued. The agent should inform him correctly. We are relying on the agent to do the proper job, you bet."

Mr. McCarney, supervisor of defendant's credit life department, testified:

"Q. O.K. Now, of the eligibility requirements under the credit life insurance which Investors writes, has it changed over the years?

"A. Yes. In 1968 the Insurance Department asked us to take out portions that the man be in sound health."

Also, there is evidence that defendant in 1968 approved a practice of issuing credit life certificates on the lives of guarantors of corporate debtors and did in fact is-

sue such certificates. Defendant made no effort to cancel the insurance certificate on the life of Hayes until after Hayes' death.

In *McDaniel v. Ins. Co. of Oregon,* 243 Or 1, 6, 410 P2d 814 (1966), plaintiff, a surviving husband, brought an action against defendant, a credit life insurance company who had issued a *certificate* of insurance to Mrs. McDaniel, deceased. At the time of signing the contract and the issuance of the certificate of insurance, Mrs. McDaniel was a diabetic and ill. She died 52 days later, and diabetes mellitus was a significant condition contributing to her death. This court held:

> "The contention of the defendant insurance company that the coverage of the policy failed to attach because Mrs. McDaniel was not in good health at the time of the issuance of the certificate is not supported by the weight of authority. * * *
> "* * * * *
> "There is nothing in the record from which it can be inferred that Mr. McDaniel or his deceased wife misrepresented the state of her health or knew that her physical condition was material. No written application was required. * * *." 243 Or at 6, 7.

Judgment was entered against the insurance company on the policy.

The facts in this case have the same overtones as those in *McDaniel.* No written application was taken from Hayes and there is no evidence that he or NAC acted fraudulently or made any misrepresentations as to Hayes' health. Hayes and NAC were simply never advised that Hayes' physical condition was relevant to the issuance of the credit life policy.

The trial court entered judgment for plaintiff under the theory of estoppel and the theory that the

NAC-Hayes certificate had individual contractual efficacy and could be enforced against defendant as written.

On the question of estoppel as applied in insurance cases, this court overruled *Comer v. World Insurance Co.*, 212 Or 105, 318 P2d 916 (1957) in *Bunn v. Monarch Life Insurance,* 257 Or 409, 416, 478 P2d 363 (1971). In *Bunn,* an action on a life policy, we held:

> "The estoppel should run the other way. The false answer is made by the insurer's agent and on the basis of the well-established principle of agency, the insurer should be bound by the acts of its agent. In fact, this is the mandate of ORS 744.165, * * *."

In the case at bar, the insurer's agent did not require an application from Hayes as to his health or make inquiry thereof and issued the certificate of insurance to Hayes and NAC.

In *Scribner v. Equitable Life & Cas. Co.,* 257 Or 602, 481 P2d 76 (1971), an action to recover disability and medical payments under insurance policies, we held, at 606:

> "* * * [T]he question of estoppel becomes an issue of fact to be decided in the same manner as other issues of fact are decided. Ordinarily the issue will be for the jury. But in this case, as in other cases, the court may rule that there is or is not an estoppel as a matter of law."

*See also Knight v. Continental Casualty,* 259 Or 46, 49, 485 P2d 403 (1971).

■ In this case the court tried the case on the facts and the law. The record before us supports the trial court's finding that defendant should be estopped to deny coverage and that the policy of insurance was

issued to NAC and Hayes. We find the court did not err in this respect. The certificate of insurance in defendant's home office and as sent to NAC and, presumably, to Hayes, represented that the defendant had issued insurance to Northwest Acceptance Corporation as creditor and Sidney Hayes as insured debtor. Both NAC and Hayes relied on this representation and thereby failed to seek credit life insurance from another insurer. Defendant cannot justly be permitted to assert, after Hayes' death, that no insurance policy was issued by defendant to NAC and Hayes. Also, defendant may not rely on the claimed limitations provision, to bring action in three years, on the master policy that was in the hands of the general agent but never delivered to or the contents of made known to NAC or Hayes. There is no evidence that Hayes or NAC was ever told by defendant or its agent that any action on the policy must be commenced within three years of the insured's death.

■ Lastly, defendant contends the trial court erred in awarding attorney fees under ORS 743.114, formerly ORS 736.325 (1). This statute provides:

"If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any *policy of insurance of any kind or nature,* and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon." (Emphasis added.)

The trial court allowed attorney fees after a supplemental hearing. Defendant argues that "* * * it is necessary that plaintiff bring suit upon a 'policy

of insurance.'" The trial court found that there was a policy of insurance and there is evidence to support this finding. This is true whether it is on the basis of estoppel, on the master policy, or on the NAC-Hayes certificate of insurance. *See Cody v. Ins. Co. of Oregon,* 253 Or 587, 454 P2d 859 (1969). In *Heis v. Allstate Insurance Co.,* 248 Or 636, 643-44, 436 P2d 550 (1968), we held:

> "* * * The policy behind the statute is to encourage the settlement of claims and to discourage the unreasonable rejection of claims by insurers. If the insurer, in rejecting a claim or in tendering less than is claimed, relies upon a mistaken theory of its legal liability, the plaintiff is entitled to a reasonable attorney's fee if he recovers more than the tender." (Footnote omitted.)

We find no error as to this assignment.

Affirmed.