GENERAL MOTORS ACCEPTANCE CORPORATION, a New York Corporation, Plaintiff and Respondent,

v.

Hector MARTINEZ and Manuel M. Rivera, Defendants and Appellants,

v.

GREAT EQUITY LIFE INSURANCE COMPANY OF CHICAGO, ILLINOIS; Streator Chevrolet Company, Incorporated, Al Barrutia, Brent H. Jensen, and E.C. Roseborough, Third-Party Defendants and Respondents.

No. 18072.

Supreme Court of Utah.

May 24, 1983.

Mark S. Miner, Salt Lake City, for defendants and appellants.

Jay V. Barney, Murray, William J. Hansen, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

This is an action by General Motors Acceptance Corporation (GMAC) for repossession of an automobile and for damages arising from the defendant's default on his promissory note given for the purchase of

the automobile. Defendant, Hector Martinez, and his father, Manuel M. Rivera, filed a third-party complaint against Great Equity Insurance Co. to enforce a credit insurance policy written to insure the amount of the loan after Martinez' default because of illness. The trial court entered judgment in favor of GMAC and against Martinez and Rivera, and against Martinez and Rivera on their third-party complaint against Great Equity. The only issue on this appeal is whether a pre-existing illness clause in the insurance policy excluded Hector Martinez from coverage under the policy.

On September 12, 1978, Hector Martinez purchased an automobile on a conditional sales contract from Streator Chevrolet. Martinez was told that as a condition of obtaining a financing contract he had to purchase a credit life and disability insurance policy from Great Equity. The policy designated Martinez as the insured and Streator as the beneficiary, and provided that if because of death, accident, or illness Martinez was unable to make his car payments, Great Equity would pay the remainder of the debt then owing. The premium for the policy was added to the face of the sales contract for the car, and the contract was later assigned by Streator Chevrolet to GMAC, making GMAC the new beneficiary under the policy.

At the time Martinez purchased the insurance, he did not learn about the exclusion for pre-existing conditions. Streator's agent, Mr. Elton, did not ask him about his past or present health. Martinez was not asked to sign the credit insurance application, which stated the coverage exclusions, nor was he given a copy of the insurance application or the certificate of insurance, although it was Streator's normal business practice to have an insured sign the application and to give him a copy of the insurance certificate. Apparently, Mr. Elton was unable at the time to find the blank credit insurance certificates. Nor were any of the policy exclusions explained to Martinez orally.

The insurance certificate states the policy exclusions. The "pre-existing condition" exclusion provides: "No insurance is provided hereunder ... if disability results from ... injury sustained or sickness contracted for which medical diagnosis or treatment was required ... within six months prior to the effective date [of coverage] of this certificate and which causes a loss within six months after such effective date."

Although it is undisputed that Martinez suffered from high blood pressure prior to his purchase of the insurance policy, Martinez did not misstate or misrepresent his state of health. On the contrary, the agent who filled out the Great Equity insurance application form seemed totally indifferent to Martinez' prior health.

Martinez made two monthly payments on the car prior to suffering a complete kidney failure which resulted in his total disability. He then made a demand on the insurance company to pay the balance owing on the car to GMAC. Pending the outcome of the insurance company's investigation, GMAC deferred collection on its contract. As a result of its investigation, Great Equity denied coverage on the ground that Martinez had suffered high blood pressure prior to his purchase of the car, and the subsequent kidney failure fell within the exclusionary clause of the policy for pre-existing diseases.

GMAC then brought this suit against Martinez. Martinez filed a third-party complaint against Great Equity alleging that it was liable under the insurance contract for the car payments. Great Equity admitted the existence of the insurance contract and denied coverage under the pre-existing sickness exclusion.

The trial court granted judgment against Martinez as a matter of law on the contract for the purchase of the car, and awarded GMAC $4,717.50 plus interest, costs, and attorney's fees. On the issue of Great Equity's liability under the policy, the trial court submitted seven special interrogatories to the jury. Based on the answers to

those interrogatories, the trial court entered judgment for Great Equity.

In 1961 the Legislature enacted the Model Act for the Regulation of Credit Life Insurance and Credit Accident and Health Insurance. Laws of Utah 1961, Chap. 67, § 1. That act is now found in Title 31, Chap. 34 of U.C.A., 1953. Section 31–34–6(1) states:

All credit life insurance and credit accident and health insurance shall be evidenced by an individual policy, or in the case of group insurance by a certificate of insurance, which . . . shall be delivered to the debtor.

Subsection 2 of that provision specifies what information must be included in the individual policy or group certificate issued to the debtor. Among other things, the policy or group certificate must state the "term and coverage including any exceptions, limitations and restrictions."

■ Credit life and accident insurance are generally contracts of adhesion which are not negotiated at arms length and which usually contain various provisions for protection of the interests of the insurance company. Because those who purchase such policies rely on the assumption that they are covered by the insurance they buy, the Legislature, in the interest of fair dealing, has deemed it mandatory that an insured be given a copy of the policy so that he can take whatever action is appropriate to protect his interests and be assured that the coverage which he thinks he has contracted for is actually provided. It is not consonant with our statute for an insurance company to accept premiums and then deny liability on the ground of an exclusion of which the insured was not aware because the insurance company had never informed him of the exclusion or given him the means to ascertain its existence.

■ The purpose of the statutory provision is plain: the insured is entitled to be informed in writing of the essential terms of the insurance contract, especially the exclusionary terms. Because of the reliance that people place on credit insurance policies to mitigate the hardships that often result from inability to pay a debt, the policy of the law is to prevent mistake or misunderstanding as to the terms of the insurance contract, or what in some cases may amount to sharp practice. *Frieze v. West American Insurance Co.,* 188 F.2d 331, 334–335 (8th Cir.1951) (applying California law). *See also Colvin v. Louisiana Hospital Service, Inc.,* La.App., 321 So.2d 416 (1975); *Traders & General Insurance Co. v. Pacific Employers Insurance Co.,* 130 Cal.App.2d 158, 278 P.2d 493, 495 (1955).

■ In view of these reasons and the unequivocal nature of the duty imposed by § 31–34–6, we hold that an insurance company is estopped from relying upon an exclusion in a policy if the company has failed to deliver the policy or certificate of insurance to the insured or any other document stating the exclusion.

*Gardner v. League Life Insurance Co.,* 48 Mich.App. 574, 210 N.W.2d 897 (1973), was decided under facts almost identical to those that exist in the instant case and is wholly consistent with the result we reach. The insurer sought to avoid paying on a credit insurance policy because of an exclusionary clause in the policy which had never been delivered to the insured. At the time Michigan had a credit insurance act similar to Utah's credit life and accident insurance act. The particular provision which imposed the duty to deliver a copy of the policy was identical to § 31–34–6(1). The court construed the Michigan statutory provision to mandate delivery and held that the insurance company was estopped from relying on the policy exclusion because of its failure to comply with the act.

*Hayes Truck Lines, Inc. v. Investors Insurance Corp.,* 257 Or. 602, 525 P.2d 1289 (1974), is also squarely on point. The insurer denied liability on an exclusion in a credit insurance policy for a pre-existing disability. The insurance agent had not inquired as to the status of the insured's health; the insured had not signed or received an application for insurance or a certificate of insurance; and the insured had relied on representations by the insurance company that

502

he was insured. The court held that as a matter of law the insurance company was liable.

The result reached in the instant case is also consistent with the rule laid down by a number of courts that a certificate of insurance or other literature given an insured describing the coverage controls over a master policy not delivered to the insured. *E.g., Life Insurance Co. v. Lee,* 519 F.2d 475 (6th Cir.1975); *Lecker v. General American Life Insurance Co.,* 55 Hawaii 624, 525 P.2d 1114 (1974); *Republic National Life Insurance Co. v. Blann,* 400 S.W.2d 31 (Tex.Civ. App.1966). *See also* 6 A.L.R. 4th 839–842 (1981), and cases discussed therein.

Great Equity in this case concedes that Martinez did not sign the application for insurance, which contained the exclusionary language and was made out by its agent at the time Martinez paid his premium, and that Martinez was not told at that time, or at any time, of the exclusion. It asserts, however, that it sent Martinez a copy of the policy. Great Equity's contention that the policy was sent to Martinez is supported by the testimony of its agent who testified that although he could not recall the transaction with Martinez, a copy of the policy is normally sent two or three days after the paper work of the sale is completed. On the other hand, Martinez and his father testified that no copy was received.

■ The jury was not requested in so many words to determine specifically whether the policy had been sent. However, a special interrogatory did pose the question whether Martinez either knew or should have known about the exclusion. On this question, the jury did not answer in Great Equity's favor. Since Great Equity had the burden of proof and of persuasion with respect to establishing the exclusion and because Great Equity failed to meet those burdens, the only logical conclusion is that Martinez did not know, nor should he have known of the exclusion.

■ Finally, Great Equity contends that defendants should have been aware of the exclusion because it is "standard in the in-

dustry." That conclusion does not follow. Martinez had not worked in the insurance industry and could hardly have known what was standard in the industry. Further, Great Equity's argument would, for practical purposes, render § 31–34–6 a nullity since the contention that proof of what is standard in the industry is sufficient to bind an insured is fundamentally at odds with § 31–34–6. "[T]he need for notice is beyond peradventure." *Gardner v. League Life Insurance Co., supra,* 48 Mich.App. at 577, 210 N.W.2d at 898.

■ Although estoppel is usually a factual defense, it may be established as a matter of law to preclude an insurance company from relying on an exclusion in a credit life and accident policy. *Hayes Truck Lines, Inc. v. Investors Ins. Co.,* 269 Or. 565, 525 P.2d 1289 (1974); *Scribner v. Equitable Life & Casualty Insurance Co.,* 257 Or. 602, 481 P.2d 76 (1971). On the facts of this case, Great Equity is estopped as a matter of law from denying coverage under the policy.

The judgment of the trial court is reversed and the case remanded for entry of judgment against Great Equity and in favor of Hector Martinez and Manuel M. Rivera.

Costs to appellants.

HOWE and DURHAM, JJ., concur.

OAKS, Justice (dissenting):

I cannot agree that the insurance carrier is "estopped as a matter of law" from relying on the exclusions in its policy because a copy of the policy was not delivered to the debtor-insured. Although the Model Act directs that a copy be delivered to the debtor-insured, U.C.A., 1953, § 31–34–6(1), nothing in that section or in the Act as a whole directs or indicates an intent to rescind the policy exclusions if this requirement is not met. That drastic result should not be decreed by this Court without explicit legislative direction.

The majority's decision injects a new provision into insurance contracts, a provision whose effects are almost impossible to

gauge but potentially far-reaching. An agent's failure to deliver a policy or certificate would apparently rescind all policy exclusions, since the majority's reasoning offers no basis to distinguish one exclusion from another. On this insurance contract, that would extend the policy coverage to disabilities resulting from intentionally self-inflicted injuries, flight in nonscheduled aircraft, war or military service, and normal pregnancy. As to life insurance, it would impose coverage for deaths caused by suicide.

The potential effects of the majority's decision are even more far-reaching. The rationale that the insured "is entitled to be informed in writing of the essential terms of the insurance contract" apparently applies to terms of limitation, as well as to terms of exclusion. Consequently, the majority's holding suggests that an insured who could convince a jury that he had not received a copy of the policy might enforce this policy without regard to its provisions on maximum age, gainful employment, limitation of one death benefit in the case of cosigners, and even to some unspecified point beyond the dollar limits of $15,000 on death benefits and disability payments. Other policy provisions, such as the critical definition of "total disability," would also seem to come under the majority's interdiction if sought to be applied against the insured.

The uncertainties introduced by the majority's decision will provoke litigation and frustrate the kind of loss predictions that are essential to the stability of the insurance industry.

The district court's judgment in favor of the insurance company on the basis of the policy exclusion should be affirmed.

HALL, C.J., concurs in the dissenting opinion of OAKS, J.