445 P.2d 990

**RIO GRANDE MOTOR WAY, INC., Milne Truck Lines, Inc., Palmer Brothers, Incorporated, Redman Moving and Storage Company, Inc., Barton Truck Line, Inc., Uintah Freightways, Link Trucking, Inc., and Magna-Garfield Truck Line, Plaintiffs,**

**v.**

**PUBLIC SERVICE COMMISSION of Utah, et al., Harry L. Young & Sons, Inc., and G. Grant Sims, et al., Executors, dba Salt Lake Transfer Company, and Ashworth Transfer, Inc., Defendants.**

Nos. 11221–11223.

Supreme Court of Utah.

Oct. 17, 1968.

William S. Richards, of Gustin & Richards, Salt Lake City, for plaintiffs.

Phil L. Hansen, Atty. Gen., H. Wright Volker, Asst. Atty. Gen., George W. Latimer, Keith E. Taylor, Salt Lake City, for defendants.

CROCKETT, Chief Justice:

In this proceeding the plaintiffs challenge the right of the Public Service Commission to issue authority on a temporary basis to the defendant common motor carriers. Insofar as is material here, each of the three defendants is rendering what can be called a specialized carrier service. Their certificates are generally similar, but contain some variations in wording, not material to the principal issue here. They are authorized to make hauls throughout the State of an unusual or irregular character which, by reason of "size, shape, weight, origin or destination require equipment or service of a character not regularly furnished by the regular common carriers * * *."[1]

The difficulties which provide the foundation for the instant proceeding are these: some of the plaintiffs, who are competing motor carriers, have contended that the defendant Ashworth Transfer was rendering services not authorized by its certificate. This resulted in an Investigation and Suspension proceeding against Ashworth. Although it was terminated in favor of Ashworth by dismissal, that proceeding was characterized by the Commission itself as, "* * * awkard, incomplete, and wholly unsatisfactory to the Commission. * * *"

As a result of that unsatisfactory state of affairs, the defendants filed with the Commission a "Petition For *Construction* of Certificate of Convenience and Necessity and in the Alternative an Application For a Certificate of Public Convenience and Necessity." In it they sought confirmation of the right to offer the service which they claim they have been performing under such certificates for many years, which right is challenged by the plaintiff protesting carriers.

The specific problem confronted in the proceeding before this court arises thus: At the defendants' request the Commission

1. See Ashworth Transfer Co. v. Public Service Commission, 2 Utah 2d 23, 268 P.2d 990, for detail of one of these certificates and extensive discussion thereon; and also Salt Lake Transfer Co. v. Barton Truck Line, Inc., 8 Utah 2d 401, 335 P.2d 829.

granted them "temporary authorities" to operate, during the pendency of their petition, in accordance with their desired "construction" of their certificates, whereas, the plaintiffs contend that the Commission had no power to grant such temporary authority to the defendants as common carriers.

The plaintiffs' argument is that inasmuch as the legislature expressly granted the Commission power to grant temporary operating authority to contract carriers, by implication, it precluded the issuance of such authority to common motor carriers. This is based on Sec. 54–6–10, U.C.A.1953:

> The commission shall have power, without a hearing, to issue temporary, seasonal or emergency permits to *contract motor carriers* in intrastate commerce, * * *. Such permits and licenses may be issued upon such information, application or request therefor, as the commission may prescribe * * *. *but in no event shall any temporary, seasonal or emergency permit or license be issued for a period of time greater than sixty days in length * * *.*

Reliance is placed upon the maxim "expressio unius est exclusio alterius." It is appreciated that that maxim is sometimes helpful in determining the meaning of an otherwise questionable statute. But its only usefulness is for that purpose: as a rule of construction.[2] It has no force of law; and it has no proper application when its effect would be to obstruct rather than to carry out the purpose of the statute. It has been aptly said that it is "a valuable servant, but a dangerous master." [3] Whether it is helpful in understanding the intended effect of a statute depends upon an analysis of the legislative enactment to which it is sought to be applied.[4] It is therefore appropriate to look to the provisions and purposes of the statutes relating to enfranchising and regulating motor carriers.

The first comprehensive act was passed by the legislature in 1933 (Chap. 53, S.L.U.1933). Article II thereof relates to the issuance of certificates of convenience and necessity and the regulation of *common* motor carriers; while Article III deals separately with *contract* motor carriers and the issuance of operating permits

---

2. See 50 Am.Jur. Statutes 245. Also see Attorney General of Utah v. Pomeroy, 93 Utah 426, 73 P.2d 1277, wherein Justice Wolfe speaking of the maxim said: "This maxim is not controlling in construing a statute * * *, but is only one of the aids to determine intention."

3. See statements by Lord Campbell in Saunders v. Evans, 8 H.L.Cas. 721, 729, 11 Eng. Reprint, 611, and by Lord Justice Lopes in Colquhoun v. Brooks, L.R. 21 Q.B.Div. 52, 65.

4. According to Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793, the maxim "properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that

to them. This separate recognition and treatment of these different types of service has been continued in all subsequent enactments.[5] It is of some significance here that of the two services, common motor carrier service is the more extensive and important insofar as the general public is concerned. Because of that fact, and the fact that it is dealt with separately in the Motor Carrier Act, it seems most reasonable and consistent with its purposes to look at that act and to give its provisions a practical interpretation which will enable the Commission to discharge its duties and carry out the stated objectives: " * * * to supervise and regulate all common motor carriers" and "to insure adequate transportation service" to the public, as set forth in Sec. 54-6-4, U.C.A.1953, to which purpose that section provides that the Commission is " * * * vested with power and authority * * * [numerous specified powers and duties] * * * and to do all things necessary to carry out and enforce the provisions of this act." [6] After so considering the pertinent statutes and the purposes they are intended to serve, we do not see anything to justify reaching over into the part of

the act relating to granting temporary permits to contract carriers and implying therefrom any restriction upon the general powers and duties granted as above stated to the Commission to regulate common motor carriers.[7]

It is not to be doubted that in the performance of the responsibility imposed upon the Commission of seeing that common carrier service is available to the public, because of the constant increase of populations and industry, exigencies may arise where it is necessary and desirable to issue authority on a temporary basis so the public will not be deprived of service it should have. Nor is it questioned that the administrative practice in the past has always been to issue such temporary authority where it seemed necessary and advisable, at least for reasonable periods of time, so that the regular procedure on an application could be completed. From what we have said above about the statutes relating to motor carriers and the practical necessities involved in carrying out their objectives, we believe that the practice followed of issuing temporary authority where it is deemed necessary is a fair and reasonable interpretation under the Act. Insofar

that which is omitted must be intended to have opposite and contrary treatment."
5. See Title 76, U.C.A.1943, and Title 54, U.C.A.1953.
6. This is also in harmony with the general powers granted the Commission to supervise and regulate public utilities granted by Sec. 54-4-1, U.C.A.1953: "The com-

mission is hereby vested with power * * * to do all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of such power * * *."
7. See Ford v. United States, footnote 4, supra.

as we are aware, this question has never been dealt with directly by this court. But in the case of Continental Bus System v. Public Service Commission [8] it was referred to and the court indicated its awareness of the necessity for the granting of temporary permits to common carriers to take care of emergency situations so the Commission could fulfill its responsibilities to the public.

■ In connection with the conclusion just stated some further observations are deemed appropriate. There always exists the possibility of the Commission abusing such power: by the ill-advised issuance of such temporary authority where there is actually no emergency need therefor, or by issuing it for too long a time, or by successive grants, which would unjustifiably affect adversely existing carriers, meanwhile circumventing the regular procedure of notice and hearing to determine the propriety of issuing such authority. It is inherent in the nature of such emergency procedure that the Commission is obliged to recognize the limitation that "temporary authority" should be confined to what the term implies: a temporary expedient to meet some emergency which public con-

venience and necessity requires being taken care of, and where some hardship will result unless it is supplied while the regular procedure of notice and hearing is being carried out.[9] It is therefore essential that when the authority is issued on such a "temporary" basis that it be shown that an emergency need exists, and that it be confined within a reasonable and limited time so there will not be an unwarranted and arbitrary intrusion into the rights of existing carriers who oppose it.

■ It is our opinion that the record here does not demonstrate that the foregoing requirements are met, particularly in view of the fact that the "construction" of their certificates as sought by the defendants appears to be somewhat at variance with their prior existing certificates.[10] If the new authorities which the defendants seek by "construction" are identical with their old certificates, as the defendants claim them to be, we do not see why the old certificates could not have been left in effect and thus have avoided the controversy here presented. It is therefore our conclusion that the issuance of the "temporary authorities" was unjustified and arbitrary. They should be set aside and the parties

8. 16 Utah 2d 87, 396 P.2d 404.
9. In Continental Bus System v. Public Service Commission, footnote 8 above, the court also observed that: "The very fact that the permits are considered to be temporary in nature indicates that its duration should be short * * *."

10. That the extent of authority must be found within the certificate and cannot be extended by "interpretation"; see W. S. Hatch v. Public Service Commission, 3 Utah 2d 7, 277 P.2d 809.

left in status quo under their prior certificates until the proceedings are completed. It is so ordered and the case is remanded for ·whatever further proceedings and determination the Commission shall deem advisable not inconsistent with this opinion. No costs awarded. (All emphasis added.)

CALLISTER, HENRIOD, TUCKETT and ELLETT, JJ., concur.