Patrick **CULLUM** and Tarrie Larkin, guardian ad litem of Tammy Yates, a minor, Plaintiffs and Appellants,

v.

**FARMERS INSURANCE EXCHANGE,** Defendant and Appellee.

No. 900559.

Supreme Court of Utah.

July 16, 1993.

James R. Boud, David A. Wilde, Murray, for plaintiffs.

Lewis B. Quigley, Salt Lake City, for defendant.

DURHAM, Justice:

Plaintiffs appeal from a judgment that defendants are obligated to pay them only $20,000 per person, or a total of $40,000, in coverage for damages incurred in an automobile accident. We reverse and remand.

On April 9, 1989, plaintiff Patrick Cullum and Tammy Yates, a minor,[1] were injured when an automobile driven by Richard Smith struck the motorcycle on which they were riding. Mr. Smith was driving the car with the permission of the daughter of Melvin Fish, the car's owner. Mr. Smith was not a member of Mr. Fish's household, nor was he a named insured under Mr. Fish's insurance policy. The car was insured under a policy issued by defendant Farmers Insurance Exchange that provided liability coverage up to $50,000 per person or $100,000 per accident. However, the policy contained a "step-down" clause[2] stating:

> We will provide insurance for an insured person, other than you or a family member, up to the limits of the Financial Responsibility Law only.

Plaintiffs sought to recover under this policy, but defendant refused to pay more than $40,000 ($20,000 per person), which was the minimum liability coverage required by law at that time. Utah Code Ann. § 31A–22–304 (1986).[3] Plaintiffs filed this action for declaratory relief, arguing that the limitation is void and unenforceable and that defendant is obligated to provide $100,000 in coverage for the accident. Both parties moved for summary judgment.[4] The court denied plaintiffs' motion and granted defendant's, holding, "Defendant ... has no further obligation to the Plaintiffs to provide coverage for sums under its policy in excess of ... $20,000 per person."

Plaintiffs appeal from the summary judgment. They argue that the step-down clause (1) violates Utah Code Ann. § 31A–22–303, which permits an insurer to provide step-down coverage only in certain circumstances, (2) violates Utah Code Ann. § 31A–21–106, which directs that an insur-

ance policy may not incorporate any provision by reference, and (3) is ambiguous and should therefore be construed against the insurer. We reject plaintiffs' first claim and hold that section 31A–22–303 does not prohibit an insurer from providing step-down coverage for permissive users. However, we agree with plaintiffs' argument that the provision at issue violates Utah Code Ann. § 31A–21–106; consequently, we reverse and remand for further consideration.[5]

## I. AVAILABILITY OF STEP-DOWN COVERAGE

Plaintiffs argue that the Utah Insurance Code prohibits an insurer from providing step-down coverage for permissive users. They note that the Code sets forth two instances where step-down coverage is allowed and claim that the legislature has thus declared by implication that step-down coverage is not permissible in any other circumstance. We reject this argument.

Utah Code Ann. § 31A–22–303 provides:

> (2) A policy containing motor vehicle liability coverage ... may:
>
> ...;
>
> (c) if the policy is issued to a person other than a motor vehicle business, limit the coverage afforded to a motor vehicle business or its officers, agents, or employees to the minimum limits under Section 31A–22–304, and to those instances when there is no other valid and collectible insurance with at least those limits, whether the other insurance is primary, excess, or contingent; and
>
> (d) if issued to a motor vehicle business, restrict coverage afforded to anyone other than the motor vehicle business or its officers, agents, or employees to the minimum limits under Section

---

**1.** Tammy Yates is represented by her guardian ad litem, plaintiff Tarrie Larkin.

**2.** A step-down clause reduces the level of coverage provided in certain situations.

**3.** The limits have since increased to $25,000 per person or $50,000 per accident. Utah Code Ann. § 31A–22–304 (Supp.1993).

**4.** Plaintiffs originally labelled their motion as one for judgment on the pleadings.

**5.** We therefore do not address plaintiffs' ambiguity argument.

31A–22–304, and to those instances when there is no other valid and collectible insurance with at least those limits, whether the other insurance is primary, excess, or contingent.

Plaintiffs contend that because these subsections specifically allow step-down coverage in connection with motor vehicle businesses, they implicitly prohibit step-down coverage in all other situations. Plaintiffs essentially argue the maxim "expressio unius est exclusio alterius," that is, "the expression of one thing is the exclusion of another." *Black's Law Dictionary* 521 (5th ed. 1979). But this principle is only an aid to statutory interpretation; it is not a rule of law, and it has only limited application.[6] *Rio Grande Motor Way, Inc. v. Public Serv. Comm'n,* 445 P.2d 990, 992 (Utah 1968). A court's primary responsibility in interpreting a statute "is to give effect to the intent of the legislature," *American Coal Co. v. Sandstrom,* 689 P.2d 1, 3 (Utah 1984), and rules of statutory interpretation exist only to assist in this determination. *Stone v. Superior Court,* 31 Cal.3d 503, 183 Cal.Rptr. 647, 659 n. 10, 646 P.2d 809, 821 n. 10 (1982). The inclusion of specific matter in a statute implies the exclusion of something else "only where in the natural association of ideas the contrast between a specific subject matter which is expressed and one which is not mentioned leads to an inference that the latter was not intended to be included within the statute." 82 C.J.S. *Statutes* § 333, at 670 (1953).

We conclude that the legislature did not intend to limit step-down coverage to motor vehicle businesses. First, subsections (2)(c) and (d) do more than merely allow step-down coverage; these provisions also allow certain policies to limit coverage to those instances where no other valid and collectible insurance is available. Moreover, the concepts of "motor vehicle businesses" and "permissive users" are not so closely related that the specific authorization of step-down coverage for the former reveals an intent to prohibit such coverage for the latter. The provisions relating to motor vehicle businesses were intended to address a specific concern, not to set forth a rule of general applicability. That is, the legislature enacted these provisions to clarify what sort of coverage is allowed for motor vehicle businesses, not to list all of the circumstances in which an insurer may provide step-down coverage.

Indeed, application of plaintiffs' argument to a different part of section 31A–22–303 suggests that the legislature specifically intended to *allow* reduced coverage for permissive users. Subsection (1)(b)(i) provides that an owner's liability policy must insure (1) the person named in the policy, (2) any other person using a named vehicle with the insured's permission, and (3) anyone related to the insured and living in his or her household. Utah Code Ann. § 31A–22–303(1)(b)(i). Subsection (1)(c) then provides that the policy must "insure persons related to the named insured ... to the same extent as the named insured." *Id.* § 31A–22–303(1)(c). The legislature thus created two categories of drivers to be covered in addition to the named insured: relatives and permissive users. It then specifically provided that *one* of these groups, relatives, must be covered to the same extent as the named insured. This suggests that equal coverage is not required for the other group, permissive users.

We therefore hold that the statute does not prohibit insurers from providing step-down coverage for permissive users, as long as the coverage satisfies the statutory minimums set forth in section 31A–22–304.

## II. INCORPORATION BY REFERENCE

Plaintiffs argue that the reference in the step-down clause to "the limits of the Financial Responsibility Law" violates Utah Code Ann. § 31A–21–106, which prohibits incorporation of provisions not appearing in the contract or in attached docu-

**6.** "It has been aptly said that it is 'a valuable servant, but a dangerous master.'" *Rio Grande Motor Way, Inc. v. Public Serv. Comm'n,* 21 Utah 2d 377, 445 P.2d 990, 992 (1968) (footnote omitted).

ments. We agree. Section 31A–21–106(1) provides:

No insurance policy may contain any agreement or incorporate any provision not fully set forth in the policy or in an application or other document attached to and made a part of the policy at the time of its delivery.

Defendant's policy purports to limit coverage provided to permissive users but does not identify the limits. Rather, it refers to an undefined "Financial Responsibility Law." Thus, the policy incorporates coverage limits from an outside source without fully setting them forth in the contract. This violates the plain language and purpose of section 31A–21–106.

Defendant presents a number of arguments as to why section 31A–21–106 should not apply, none of which is persuasive. First, defendant argues that the statute prohibits only incorporation of other *documents,* not statutes. The language of the statute does not lend itself to such an interpretation, however, and defendant has not cited any authority supporting its argument. Further, there is no basis in logic or policy for such a restrictive interpretation. Defendant claims that section 31A–21–106 cannot apply to incorporation of statutes because all statutes are considered to be incorporated in every contract anyway, but this argument misses the point. The "incorporation" of statutes to which defendant refers is different from the incorporation prohibited by section 31A–21–106. To say that statutes are automatically incorporated in all insurance contracts simply means that all contracts must be construed according to those statutes; this addresses the manner of interpretation of the contract. Section 31A–21–106, on the other hand, addresses the method of *drafting* insurance contracts. It directs that all provisions must be physically present in the written contract itself or in other documents attached to the contract at the time of its delivery.

Moreover, allowing an exception for incorporation of statutory provisions would frustrate the purpose of section 31A–21–106. Its aim is to ensure that the entire insurance contract is contained in one document so that the insured can determine from the policy exactly what coverage he or she has. Indeed, defendant itself argues that one of the statute's purposes is to "permit each party to rely on the terms of the policy itself to the exclusion of ... other papers." This goal would be defeated by allowing incorporation of substantive statutory provisions just as it would by allowing incorporation of other written material.

This case presents an excellent example of the foregoing problem, for an owner insured under defendant's policy cannot determine his or her coverage solely by relying on the document. An important element—the amount of coverage provided for permissive users—is not disclosed. In fact, the insured would have great difficulty discovering exactly what coverage this policy provides. The policy does not specify the law to which it refers. Even if an insured figures out that the provision refers to a *Utah* law,[7] he or she would have difficulty finding the coverage limits. "Financial Responsibility Law" is not listed in the most recent index to Utah Code Annotated; there is a listing for "Financial Responsibility Provisions—Motor Vehicles," but it refers to sections 41–12a–101 to –606, which do not contain the minimum coverage limits. Rather, one would have to find section 41–12a–103(9)(a) or (b), which defines "owner's security" as, inter alia, an insurance policy or surety bond "conforming to Section 31A–22–302." The next step would be to locate this last-referenced section, which provides that every insurance policy bought to satisfy the security requirements must include "motor vehicle liability coverage under Sections 31A–22–303 and 31A–22–304." Assuming the insured is still on the trail at this point, he or she would then have to find section 31A–22–304, which sets forth the limits.[8]

---

7. This itself is far from clear.

8. Of course, if the insured does not know about the pocket supplements, he or she still will not find the true limits because the statute has been

Defendant argues that an insured who wants to know how much coverage is provided can simply call his or her insurance agent. The entire point of section 31A–21–106, however, is to ensure that an insured does not have to rely on information outside the policy itself to know its terms. Indeed, defendant's rationale would apply equally to incorporation of other documents or material within the insurer's possession. An exception allowing incorporation of information available from the insurer would vitiate the statute.

Defendant further argues that an insured car owner has no reason to care how much coverage is provided for permissive users and therefore presumably does not need to know. We do not agree. An insured may be reluctant to send a friend out on the road with inadequate coverage, and he or she may not wish to place the general population at risk by loaning a car to a driver with insufficient liability insurance. We similarly reject defendant's contention that a permissive user is unlikely to be interested in how much coverage the owner's policy provides because he or she will be covered under his or her own policy. Many drivers do not own cars and therefore do not have their own insurance. When such a driver borrows a friend's car to run an errand or shares driving on a trip, the only insurance he or she has is that provided under the owner's policy. We will not presume that purchasers of car insurance would knowingly or deliberately put their friends or others at risk of financial disaster.

Finally, defendant argues that prohibiting incorporation of statutory provisions would lead to unreadable policies. It contends that if we reverse the trial court on this point, insurers will have to list mandatory insurance amounts for every state and province in the United States and Canada and will have to update each policy every time any state changes its limits. This claim is unpersuasive. First, we cannot

simply ignore the plain language of section 31A–21–106. Second, this case does not involve a minor technical violation appearing in an obscure provision of the policy, where "substantial compliance" with the statute might suffice. The policy at issue here fails to inform the insured of the *amount* of liability coverage provided to a permissive user; to an insured, coverage amounts are the most critical features of an insurance policy. Also, the policy fails to specify the amount of coverage in *Utah*—where the insured lives, where the car was registered, where the policy was purchased, and where most of the driving presumably takes place. Third, defendant could easily have included the actual dollar amounts in the policy; indeed, plaintiffs submitted a copy of another insurer's policy, which specifies that under certain circumstances, the coverage

> shall apply only for the minimum limits of motor vehicle liability coverage as provided for in Utah Code Annotated, 1953, as amended, § 31A–22–304 and 305 providing for liability and uninsured motorist coverage *for $20,000 per person[,] $40,000 per accident and $10,000 because of injury or destruction of property per accident,* not the amounts set forth in the Declaration, if greater.

(Emphasis added.) Finally, the statutory coverage limits would not change more often than once per year, and an insurer should have enough time to inform its policyholders of any changes before they take effect.[9]

The result we reach today is consistent with policy concerns we have expressed in previous cases. For example, in *Farmers Insurance Exchange v. Call,* 712 P.2d 231 (Utah 1985), we held that a household exclusion clause in an automobile liability policy was unenforceable where the insurer failed to deliver the policy or otherwise disclose in writing the existence of the exclusion. We stated, "[P]ublic policy re-

amended since the bound volume was published.

**9.** Article VI, section 25 of the Utah Constitution provides that "no act shall take effect until sixty

quires that persons purchasing [automobile liability] policies are entitled to be informed, in writing, of the essential terms of insurance contracts, especially exclusionary terms." *Id.* at 236 (citing *General Motors Acceptance Corp. v. Martinez,* 668 P.2d 498, 501 (Utah 1983)); *see also Martinez,* 668 P.2d at 501 ("[T]he policy of the law is to prevent mistake or misunderstanding as to the terms of the insurance contract, or what in some cases may amount to sharp practice."). In light of the plain language and purpose of section 31A–21–106, the important nature of the omitted material, and the ease with which the insurer could have set forth the actual limits of coverage, we hold that the limitation provision in this policy violates section 31A–21–106 and is unenforceable.

The parties do not address the question of what policy limits will apply to permissive users in the absence of those imposed by the unenforceable provision. This determination depends on an analysis of the rest of the contract, which is not part of the record before us. We thus reverse the trial court's grant of summary judgment and remand for further proceedings to determine how much coverage defendant is required to provide under the remaining valid terms of the contract.

HOWE, Associate C.J., and ZIMMERMAN, J., concur.

HALL, C.J., concurs in the result.

STEWART, Justice, concurring in the result:

I concur with Justice Durham that Utah Code Ann. § 31A–21–106 prohibits an insurance policy from incorporating by reference the limits of the Financial Responsibility Law. In my view, however, § 31A–22–303 is ambiguous as to the validity of step-down coverage for permissive users of family vehicles, and the parties have not briefed the issue sufficiently to justify a well-considered decision on that point. Certainly nothing in the statutory language compels the Court's conclusion.

It is sufficient in this case to hold that § 31A–21–106 does not allow incorporation by reference of the limits of the Financial Responsibility Law. The validity of the step-down provision of § 31A–22–303 with regard to permissive users need not be addressed because the incorporation issue is dispositive.

Given the construction the Court places on § 31A–22–303, I believe that many insureds who loan their cars to friends, babysitters, or others to do errands will be in for an unpleasant surprise when, in the event of an accident, injured persons are denied any remedy above the meager public liability insurance minimums required by the automobile financial responsibility laws.