2004 UT 73

**FARMERS INSURANCE EXCHANGE,
reciprocal or inter-insurance exchange,
Plaintiff and Appellee,**

v.

**Don VERSAW, Arthur Vierra, and
Corina Vierra, Defendants
and Appellants.**

No. 20020747.

Supreme Court of Utah.

Aug. 24, 2004.

John M. Chipman, Salt Lake City, for plaintiff.

H. Michael Drake, Salt Lake City, for defendant Don Versaw.

Roger H. Hoole, Salt Lake City, for defendants Arthur and Corina Vierra.

NEHRING, Justice:

¶ 1 In this appeal, we decide whether language in an automobile insurance policy issued by Farmers Insurance Exchange limits recovery of a spouse for his separate loss of consortium claim to the "per person" maximum provided in the policy. The trial court held that it did. We disagree and reverse.

## BACKGROUND

¶ 2 Mr. Don Versaw was in an automobile collision with Mrs. Corina Vierra in 1998. Mrs. Vierra sustained injuries, including a closed head injury, and incurred medical expenses which exceeded $25,000. Mrs. Vierra also lost several years' income, as the injuries she sustained in the accident rendered her unable to return to work.

¶ 3 At the time of the accident, Mr. Versaw was insured by Farmers Insurance Exchange. His policy provided him with liability coverage of $30,000 per person and $60,000 per occurrence. Mrs. Vierra offered to settle her claim against Mr. Versaw for the $30,000 per-person policy limit.

¶ 4 Mrs. Vierra's husband, Mr. Arthur Vierra, who was not in the vehicle at the time of the accident, brought a claim against Mr. Versaw for loss of Mrs. Vierra's consortium.

¶ 5 Farmers refused to indemnify Mr. Versaw for Mr. Vierra's loss of consortium claim. Farmers filed this action for declaratory relief, asking the trial court to determine its obligations under its policy with Mr. Versaw. It contended that its policy was clear that a loss of consortium claim would be subsumed in any claim for personal injury, and offered the Vierras only a single per-person policy limit of $30,000. In aid of its position, Farmers pointed to the following policy language from the "E–Z Reader Car Policy" it issued Mr. Versaw:

The bodily injury liability limit for "each person" is the maximum for bodily injury sustained by one person in any occurrence. Any claim for loss of consortium or injury to the relationship arising from this injury will be included in this limit.

If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim, financial responsibility limits will be furnished.

We will provide insurance for an insured person, other than you or a family member, up to the limits of Utah's financial responsibility law only of $25,000 per person, $50,000 per occurrence for bodily injury, and $15,000 for property damage.

¶ 6 The trial court agreed with Farmers that the $30,000 limit for bodily injury to one person applied. The trial court stated that

the language of the policy of automobile liability insurance issued by Farmers Insurance Exchange to Don Versaw unambiguously states that a single limit of liability coverage of $30,000 applies to both a personal injury claim and a loss of consortium claim and that such language of the policy complies with Utah law.

We disagree and reverse, holding that the policy is ambiguous and is consequently construed in favor of the policyholder.

¶ 7 Our examination of Farmers's policy for ambiguity is a review which we undertake without deference to the trial court. *AOK Lands v. Shand, Morahan & Co.*, 860 P.2d 924, 925 (Utah 1993).

## ANALYSIS

¶ 8 To communicate its terms with adequate clarity, a contract of insurance must use language and grammar capable of understanding by a reasonable insurance purchaser. *U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 521–22 (Utah 1993). We have formulated the test for insurance contract clarity this way:

"Would the meaning [of the language of the insurance contract] be plain to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy[?]"

*LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988) (quoting *Auto Lease Co. v. Cent. Mut. Ins. Co.*, 7 Utah 2d 336, 339, 325 P.2d 264, 266 (Utah 1958)).

¶ 9 This test is supplemented by our observation that ambiguities typically appear in two forms: "An ambiguity in a contract may arise (1) because of vague or ambiguous language in a particular provision or (2) because two or more contract provisions, when read together, give rise to different or inconsistent meanings, even though each provision is clear when read alone." *Sandt*, 854 P.2d at 523. Both types of ambiguity infect the terms of Farmers's E–Z Reader Car Policy relating to the coverage for loss of consortium.

¶ 10 The focus of our analysis is the three-paragraph segment of the policy quoted above. Standing alone, the first paragraph is unambiguous. Its first sentence defines the "each person" bodily injury liability limit. The second sentence expressly references loss of consortium claims and clearly includes them within the "per person" maximum. Were this all the policy had to say on the topic of loss of consortium claims, Farmers would prevail. However, the policy goes on.

¶ 11 The second paragraph is comprised of one sentence. Its meaning is at odds with Farmers's preferred interpretation. Paragraph two is clear to the extent that it communicates to the policyholder that under certain circumstances the limitation on loss of consortium coverage set out in paragraph one would not apply and that a loss of consortium claim would be eligible for coverage beyond the "per person" maximum. The ambiguity in this paragraph emanates from textual obscurity concerning what circumstances would trigger the application of this exception to the "per person" limits and what coverage would be brought about by the exception. We will speak to each of these ambiguous elements in turn.

¶ 12 The second paragraph begins with a clause that states, "If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim...." This clause describes the contingency that must be present for the exception to the coverage limit imposed by paragraph one to arise. The contingency itself has two components: a statutory designation of loss of consortium as a separate claim, and a body of law, the "financial responsibility law," in which the designation must appear.

¶ 13 Conceptually, a legislative determination to treat, by statute, loss of consortium as a claim separate from the claims of the person who sustains bodily injury would provide a logical rationale for an exception to the provision in paragraph one that merges the claims of both parties under the "per person" limit. A reasonable reader of this provision would likely seize upon the clear implication that if the legislature of the place of the accident had codified loss of consortium as a separate claim, the condition to accessing the exception in paragraph two would be met.

¶ 14 The Utah legislature has codified loss of consortium as a separate claim. Utah Code Ann. § 30–2–11 (1998). The existence of this statute might reasonably suggest to a policyholder curious enough to search it out that a loss of consortium claim would be subject to the exception in paragraph two. According to Farmers, however, this conclusion would be incorrect because the loss of consortium statute is not part of Utah's "financial responsibility law." Stripped to its essence, Farmers's argument is that when it comes to deciding whether a statute creating a separate claim for loss of consortium qualifies for application of the paragraph two exception, its location is as important as its substance.

¶ 15 Farmers insists that the phrase "financial responsibility law" unambiguously refers to a particular body of law that includes separate liability limits for various types of injury and damage. Farmers ties its assertion that statutory financial responsibility limits must be attached to the statute creating a separate claim for loss of consortium to the second clause in paragraph two which reads, "financial responsibility limits will be furnished." As Farmers reads paragraph two, the financial responsibility limits that will be furnished are those limits incorporated within the financial responsibility law that also contains the codification of loss of consortium as a separate claim.

¶ 16 While Farmers's interpretation of paragraph two displays descriptive agility, it becomes clumsy when asked to perform. While it is true that some jurisdictions, notably California and New Mexico,[1] have adopted Farmers's interpretation, Utah, unlike those jurisdictions, has no discrete, self-contained "financial responsibility law." Utah's financial responsibility laws are instead scattered throughout multiple titles and sections, pieced together only by reference. We have previously had occasion to make this point when Farmers sought to defend its failure to disclose Utah's statutory liability limits in the text of an automobile policy against a challenge to Farmers's attempt to limit coverage to a permissive user of an insured's vehicle under the "step down" provision in its automobile insurance contract. *Cullum v. Farmers Ins. Exch.*, 857 P.2d 922 (Utah 1993). Although the issue presented in *Cullum* concerning the scope of the statutory prohibition against incorporating contract terms by reference is not before us here, our discussion of what we characterized as an "undefined 'Financial Responsibility Law' " is apt:

> "Financial Responsibility Law" is not listed in the most recent index to Utah Code Annotated; there is a listing for "Financial Responsibility Provisions—Motor Vehicles," but it refers to sections 41–12a–101 to –606, which do not contain the minimum coverage limits. Rather, one would have to find section 41–12a–103(9)(a) or (b), which defines "owner's security" as, inter alia, an insurance policy or surety bond "conforming to Section 31A–22–302." The next step would be to locate this last-referenced section, which provides that every insurance policy bought to satisfy the security requirements must include "motor vehicle liability coverage under Sections 31A–22–303 and 31A–22–304." Assuming the insured is still on the trail at this point, he or she would then have to find section 31A–22–304, which sets forth the limits.

*Id.* at 925 (footnote omitted). Since then, the legislature has not altered the labyrinthine framework of our laws relating to automobile insurance in any way that would cause us to reconsider our views expressed in *Cullum*. In Utah, financial responsibility law remains undefined.

¶ 17 In fact, an intrepid policyholder bent on prospecting the Utah Code for guidance could reasonably conclude that to the extent Utah has a "financial responsibility law," that law satisfies the conditions of paragraph two of Farmers's policy. Chapter 12a of Title 41 of the Utah Code is designated the "Financial Responsibility of Motor Vehicle Owners and Operators Act." Utah Code Ann. §§ 41–12a–101 to –806 (2003). Section 41–12a–104(3) states that the Act "is cumulative with the requirements of the laws of this state requiring policies of motor vehicle insurance against liability."

¶ 18 Among the laws drawn within the ambit of the Act by this provision are sections 31A–22–301 through 31A–22–320 of the Utah Insurance Code relating to motor vehicle insurance. Section 31A–22–302 states: "(1) Every policy of insurance or combination of policies purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301 shall include: (a) motor vehicle liability coverage under Sections 31A–22–303 and 31A–22–304 ...." *Id.* § 31A–22–320(1)(a).

¶ 19 Section 31A–22–303(1)(a)(ii)(A), in turn, mandates that coverage be extended "against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of ... motor vehicles." Having been codified as a separate claim in section 30–2–11, liability for loss of consortium is clearly a "liability imposed by law" and, therefore, subject to this provision. Based on this close affinity among statutory provisions having as their common source the "Financial Responsibility of Motor Vehicle Owners and Operators Act," a policyholder could reasonably conclude that Utah's financial responsibility law treats loss of consortium as a separate claim.

¶ 20 We next take up and turn away Farmers's argument that because Utah's financial responsibility laws do not expressly set forth financial responsibility limits for loss of con-

1. *See Mid–Century Ins. Co. v. Bash*, 211 Cal. App.3d 431, 259 Cal.Rptr. 382 (1989); *Nollen v.* *Reynolds*, 125 N.M. 387, 962 P.2d 633 (Ct.App. 1998).

sortium, Mr. Vierra's loss of consortium claim is not subject to the paragraph two exception. We may confine our analysis of this contention to the text of the three relevant paragraphs of the policy and need not take on additional statutory parsing.

¶ 21 We start by examining the text of paragraph three. This paragraph is Farmers's revision of the "step down" contract term which was at the center of the dispute in *Cullum*. There, we held unenforceable a version of the "step down" clause that restricted liability coverage of permissive drivers to "the limits of the Financial Responsibility Law" because the contract failed to disclose what those limits were. *Cullum*, 857 P.2d at 924–25. The revised version, which appears in Mr. Versaw's policy, remedied the *Cullum* defect by including language that sets out the amounts required by Utah's financial responsibility laws. The revised text, however, created a different ambiguity concerning the amount of coverage available for loss of consortium claims that would otherwise be subject to the paragraph two exception. The relevant language of paragraph three states that coverage for permissive users will be provided "up to the limits of Utah's Financial Responsibility Law only of $25,000 per person, $50,000 per occurrence for bodily injury."

¶ 22 The ambiguity that this language injects into the loss of consortium coverage analysis becomes apparent when it is read in conjunction with paragraphs one and two. Paragraph one explains that under ordinary circumstances, a loss of consortium claim is subject to bodily injury coverage. No language in the text of paragraph two can be read to sever the linkage between loss of consortium and bodily injury coverage. It implies that if loss of consortium is treated as a separate claim, it would nevertheless be subject to bodily injury liability limits, just as it was under paragraph one. The only difference between the treatment of loss of consortium claims in paragraph one and paragraph two is that under paragraph one the contractual "per person" bodily injury limit applies, while in paragraph two the financial responsibility limits, presumably bodily injury limits, imposed by law govern.

¶ 23 In paragraph three, Farmers's policy tells us what the bodily injury limits imposed by Utah's financial responsibility law are: $25,000 per person and $50,000 per occurrence. Therefore, Mr. Versaw could plausibly interpret the terms of his Farmers policy to provide him with $25,000 of loss of consortium coverage.

¶ 24 Although we construe insurance contracts using the same interpretive tools we use to review contracts generally, we have frequently declared that because insurance policies are adhesion contracts, they are to be " 'construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance.' " *Sandt*, 854 P.2d at 521 (quoting *Richards v. Standard Accident Ins. Co.*, 58 Utah 622, 200 P. 1017, 1020 (1921)). In *Sandt*, we summarized our jurisprudence on adhesion contracts, specifically insurance contracts, recognizing our long-standing view that because insurance contracts are typically drafted by insurance company attorneys, are not negotiated by the insured, and are offered on a take-it-or-leave-it basis, " 'this jurisdiction, like many others, has declared in favor of a liberal construction in favor of the insured to accomplish the purpose for which the insurance was taken out and for which the premium was paid.' " *Id.* at 522 (quoting *Browning v. Equitable Life Assur. Soc'y*, 94 Utah 532, 562, 72 P.2d 1060, 1073 (1937) (Larson, J., concurring)).

¶ 25 We have also stated that

ambiguous or uncertain language in an insurance contract that is fairly susceptible to different interpretations should be construed in favor of coverage .... [I]f an insurance contract has inconsistent provisions, one which can be construed against coverage and one which can be construed in favor of coverage, the contract should be construed in favor of coverage.

*Id.* at 522–23. The reason for doing so is clear: "Because insurance policies are intended for sale to the public, the language of an insurance contract must be interpreted and construed as an ordinary purchaser of insurance would understand it." *Id.* at 523.

¶ 26 Here, we hold that the language of Mr. Versaw's insurance contract is ambiguous with respect to the extent of its loss of consortium coverage. Because its terms reasonably can be construed to provide $25,000 of loss of consortium coverage based on the per person bodily injury limit, we reverse the trial court and remand for further proceedings consistent with this opinion.

¶ 27 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING'S opinion.