JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Joseph Peterson ("Peterson") appeals the judgment of the trial court which denied his summary judgment motion and his motion for class certification, and granted summary judgment in favor of defendant Progressive Corporation, et al. ("Progressive").[1] For the reasons that follow, we reverse, in part, the trial court's decision granting summary judgment to Progressive; reverse, in part, the denial of Peterson's motion for summary judgment; and reverse the denial of the motion for class certification.
 {¶ 2} The instant case arises from a dispute over the terms of Progressive's watercraft insurance policies. Peterson purchased Progressive's comprehensive and collision watercraft insurance policy for his 1992 watercraft.[2] He submitted a claim to Progressive after the motor on his watercraft was damaged by an underwater hazard. Progressive elected, under the terms of the contract, to repair the damage to the motor and restore it to its pre-loss condition. When calculating the amount to be paid to Peterson, however, Progressive, in addition to the standard reduction for the policy deductible, reduced the payment by an additional $852.51 for what it called "betterment": the difference between the fair market value of the motor at the time of the loss and the increased value of the motor once the repairs were completed.
 {¶ 3} Peterson, on behalf of himself and others, filed a class action complaint against Progressive and asserted claims for breach of contract, unjust enrichment, bad faith, declaratory judgment and injunctive relief. Both parties filed motions for summary judgment and Peterson filed a motion for class certification in order to nationally challenge Progressive's "betterment policy." The trial court granted summary judgment for Progressive and denied Peterson's motions. This timely appeal followed.
 Summary Judgment {¶ 4} Peterson's first two assignments of error assert:
I. The trial court erroneously granted summary judgment in favor of Progressive because the policy language drafted by Progressive in plaintiff's watercraft insurance policy does not clearly and unmistakably permit Progressive to exclude coverage for expenses that it deems are "betterment" when it elects to restore a watercraft to its pre-loss condition.
II. The trial court erroneously denied plaintiff's motion for summary judgment on his breach of contract claim because the policy language, which must be construed against the insurer and in a manner that favors coverage, demonstrated that Progressive breached the insurance contract with plaintiff when it failed to pay for that portion of the repair that it deems to be "betterment" when electing to repair plaintiff's watercraft to its pre-loss condition.
 {¶ 5} We review a trial court's decision on a summary judgment motion de novo. Hillyer v. State Farm Mut. Auto Ins.Co. (1996), 131 Ohio App.3d 172, 175. Pursuant to Civ.R. 56(C), summary judgment may be granted when 1) no genuine issue of material fact remains to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds, after reviewing the evidence in a light most favorable to the nonmoving party, can reach but one conclusion, which is adverse to the nonmoving party. Temple v. Wean (1977),50 Ohio St.2d 317, 327.
 {¶ 6} The question presently before us involves the interpretation of an insurance contract between the parties. A contract with clear and unambiguous terms leaves no issue of fact and must be interpreted as a matter of law. Inland RefuseTransfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322. Under Ohio law, when an insurance contract contains ambiguous terms, such terms must be strictly construed against the drafter and in favor of coverage. Rushdanv. Baringer (Aug. 30, 2001), Cuyahoga App. No. 78478, 2001 Ohio App. LEXIS 3827, citing Clark v. Scarpelli (2001),91 Ohio St.3d 271 at 282, 744 N.E.2d 719. The law of insurance contract interpretation is no different in Utah, the state in which Peterson's policy was issued. See Farmers Ins. Exchange v.Versaw (Utah 2004), 99 P.3d 796, 800 (if language in an insurance policy is ambiguous, the ambiguities must be construed in favor of the insured).
 {¶ 7} In the present case, under Progressive's Utah watercraft policy, Progressive limits its liability for loss to the lowest of three alternatives: 1) the actual cash value of the stolen or damaged property at the time of the loss; 2) the amount necessary to replace the stolen or damaged property; or 3) "theamount necessary to repair the damaged property to its pre-losscondition, reduced by the applicable deductible shown on theDeclarations Page * * *." (Plaintiff's Motion for Summary Judgment, Ex. A, No. 1, p. 25, emphasis added.)
 {¶ 8} Peterson submitted a claim to Progressive after his 8-year-old boat motor was damaged by an underwater object. Progressive elected, under the terms of the policy, to repair the boat to its pre-loss condition by replacing the motor and related parts. Unable to find a used motor and available parts comparable to Peterson's motor, Progressive's adjuster computed his estimate based upon the cost of a new remanufactured motor. The cost of repair, however, was reduced not only by the applicable $500 deductible, but also by an additional $852.51, which was the difference between the value of Peterson's pre-loss depreciated motor and the value of the remanufactured motor. The adjuster referred to this amount as "betterment."
 {¶ 9} Progressive asserts that it was entitled to deduct from the repair payment any amount by which the repair improved the property above and beyond its pre-loss condition. Progressive explains that its adjusters refer to such deductions interchangeably as either "depreciation" or "betterment." Progressive argues that such deductions are permitted under the Utah policy, and that its liability is limited by the following provision:
Payments for loss covered under the Part IV are subject to the following provisions:
* * *
an adjustment for depreciation and physical condition will be made in determining the Limit of Liability at the time of the loss;
Id. at 25.
 {¶ 10} We agree with Peterson, however, that the above provision does not apply when Progressive elects, under Part IV.1.c. of the policy, "to repair the damaged property to its pre-loss condition." Instead, Progressive's liability for repairs is unambiguously explained and expressly limited by the provision immediately following 2.b.:
in determining the amount necessary to repair damaged propertyto its pre-loss condition, our estimate will be based on:
the prevailing competitive labor rates charged in the area where the property is to be repaired, as reasonable determined by us; and
the cost of repair or replacement parts and equipment whichmay be new, refurbished, restored, or used, including, but not limited to:
original manufacturer parts or equipment; and nonoriginal manufacturer parts or equipment;
Id. at 26 (emphasis added).
 {¶ 11} Nowhere in the aforementioned provision, nor anywhere else in the Progressive Utah watercraft policy that Peterson purchased, does it specify or explain that Progressive, upon electing to repair a watercraft to its pre-loss condition, is permitted to take an additional deduction from the repair costs for "betterment," "depreciation," or for any increase in the value of the watercraft that may result from the repair. Instead, Progressive is expressly obligated, pursuant to Part IV, section 2.c. of the policy, to repair the watercraft to its pre-loss condition using whatever parts and equipment it deems appropriate. If the only parts available to make the repair necessarily increase the fair market value of the watercraft, this is a cost that Progressive, under the unambiguous terms of the Utah policy, must bear. See Roberts v. Allied Group Ins.Co. (Wash.Ct.App. 1995), 901 P.2d 317, 318 (interpreting "replacement cost" as "the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation").
 {¶ 12} Notably, in its South Dakota watercraft policy, Progressive expressly notifies the insured it may make adjustments "for depreciation and betterment," and defines betterment as "a deduction from the cost of repair of your vehicle in an amount based upon some portion of the differencebetween the fair market value of the vehicle after repairs aremade and its fair market value immediately before it wasdamaged." (Plaintiff's Motion for Summary Judgment, Ex. A, No. 2, p. 21, emphasis added). The absence of this provision from the Utah policy further supports our conclusion that the policy in this case does not allow for such deductions.
 {¶ 13} Progressive suggests that paying the entire repair amount deprives it of the opportunity to make any adjustment to account for the pre-loss condition or the depreciation and physical condition of the old motor. This is simply not the case. As the policy expressly states, Progressive is not required to repair the damaged watercraft to its original, new condition; it is instead only obligated to repair it to its pre-loss condition using its choice of new, remanufactured, refurbished or used parts. Again, however, if the repair part that most closely resembles the determined pre-loss condition nonetheless increases the value of the watercraft, absent express language to the contrary, Progressive bears the burden of this cost differential under the terms of its Utah watercraft policy.
 {¶ 14} Finally, Progressive points to an exclusion in the watercraft policy which explains that coverage under the policy does not apply to "any loss" due to "wear and tear" or "gradual deterioration of any kind." Id. at 23. This section, however, is clearly intended to notify the insured that any damage to a watercraft that is the result of the aging and wear and tear of the boat will not be covered, thus its inclusion under the heading "EXCLUSIONS." Id. Once Progressive determines that the reported loss is not due to wear and tear but, rather, due to some other covered event, this section of the contract is irrelevant and has no bearing on the question of the specific amount of coverage to which the insured is entitled.
 {¶ 15} In sum, Progressive's watercraft policy does not allow it to take a deduction for betterment or depreciation to account for any increase in value over the pre-loss value that may result from the repairs it is obligated to make. Progressive thus breached its contract with Peterson when, after electing to repair his boat to its pre-loss condition, it deducted from the repair cost the amount it determined the repair would increase the value of the motor above and beyond its pre-loss value. We therefore reverse the trial court's order granting summary judgment to Progressive on the breach of contract claim, and we grant summary judgment in favor of Peterson on this question.
 {¶ 16} We agree with Progressive, however, that the trial court correctly granted its summary judgment motion on Peterson's bad faith and unjust enrichment claims. Nothing in the record before us establishes that Progressive's interpretation and application of the policy terms were in bad faith. Brown v.Moore (Utah 1998), 973 P.2d 950, 954, quoting St. Benedict'sDev. Co. v. St. Benedict's Hosp. (Utah 1991), 811 P.2d 194, 199. Peterson thus cannot sustain a bad faith claim. In the absence of bad faith on the part of Progressive, Peterson's unjust enrichment claim likewise fails. Howland v. Lyons, Cuyahoga App. No. 77870, 2002-Ohio-982; see also Am. Towers OwnersAssoc., Inc. v. CCI Mechanical, Inc. (Utah 1996), 930 P.2d 1182. We therefore affirm the trial court's rulings on the summary judgment motions as to the unjust enrichment and bad faith claims.
 Class Certification {¶ 17} Peterson's third assignment of error asserts:
THE TRIAL COURT ERRONEOUSLY DENIED PLAINTIFF'S MOTION FOR CLASS CERTIFICATION BECAUSE THE RECORD ESTABLISHED ALL NECESSARY ELEMENTS FOR CERTIFICATION AND BECAUSE THE TRIAL COURT DID NOT PROVIDE THE REQUISITE ANALYSIS.
 {¶ 18} Peterson sought to represent two classes of people ("Class A" and "Class B") directly affected by Progressive's policy of taking betterment deductions from its payment for repairs to damaged watercraft. Class A was defined as follows:
All persons in the United States who, during the relevant periods of limitations, were insured or covered under a watercraft insurance policy issued by a Progressive company that provided for comprehensive or collision coverage, and who
Owned a watercraft that was damaged in a covered accident;
Submitted a claim for repair to Progressive wherein Progressive elected to pay the amount necessary to repair the damaged watercraft to its pre-loss condition; and
Had their payment from Progressive reduced based upon a deduction for depreciation or betterment.
Specifically excluded from Class A are those individuals with policies issued in the state of Washington or whose policies specifically contain and define the term "betterment."
Appellant's Brief, p. 21.
 {¶ 19} Class B was defined as an injunctive and declaratory relief class as follows:
All persons who, during the relevant periods of limitations, paid a premium for a policy of insurance issued by a Progressive company which provided for collision or comprehensive coverage, excluding those individuals with policies issued in the state of Washington or whose policies specifically contain and define the term "betterment" [see, e.g., Progressive's South Dakota watercraft policy].
Appellant's Brief, p. 21.
 {¶ 20} The trial court denied Peterson's motion for class certification without opinion.
 {¶ 21} Because a trial court is afforded broad discretion in its determination of whether a class action may be maintained, we review a court's decision on class certification for abuse of discretion. Hamilton v. Ohio Savings Bank (1998),82 Ohio St. 3d 67, 70. A trial court's discretion on the question of class certification is not unlimited, however, "and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied. * * * [T]he failure to provide an articulated rationale greatly hampers an appellate inquiry into whether the relevant Civ.R. 23 factors were properly applied by the trial court and given appropriate weight, and such an unarticulated decision is less likely to convince the reviewing court that the ruling was consistent with the sound exercise of discretion." Id.
 {¶ 22} Per the Ohio Supreme Court, "the following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met." Id. at 71 (citations omitted).
 {¶ 23} The critical Civ.R. 23(B) requirement at issue in the present case is 23(B)(3), pursuant to which a court must determine whether:
the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
Id. at 79-80.
 {¶ 24} When determining whether common questions of law or fact predominate over individual issues, "it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication." Schmidt v. Avco Corp. (1984), 15 Ohio St.3d 310,313.
 {¶ 25} Applying the Civ.R. 23 requirements to the case at bar, we find that Peterson met his burden of demonstrating the factual and legal prerequisites for class certification. First, two clearly identifiable classes exist: those persons with Progressive watercraft policies who suffered a loss and whose repair payment from Progressive was reduced due to betterment or depreciation; and those persons with Progressive watercraft policies who might be subjected to a betterment or depreciation deduction in the future. Second, Peterson, as the named representative, is clearly a member of both classes in that his payment for a covered repair was reduced for betterment (Class A), and he stands to suffer a betterment deduction in the future should his watercraft be damaged in another covered accident (Class B). Third, it is undisputed that both classes are numerous and would render joinder impracticable.
 {¶ 26} As to the fourth and seventh requirements of Civ.R. 23 — that there be questions of law or fact common to the class and that such questions predominate over individualized legal issues — there is but one question of law that clearly predominates in this case. Moreover, the question of law presented involves a straightforward interpretation of Progressive's watercraft policies to determine whether the language of the policies entitles Progressive to take deductions for betterment or depreciation when it elects to repair a watercraft to its pre-loss condition.[3] Even for those few Progressive policies that, unlike Peterson's Utah policy and the majority of Progressive's identically worded policies, contain ambiguous language regarding the amount that Progressive is required to pay for repairs, the law regarding the interpretation of ambiguities in an insurance contract is virtually uniform nationwide: ambiguities in the language and terms of the policy are construed in favor of the insured and coverage. Contrary to Progressive's argument, the differing insurance regulations and laws of the states are irrelevant to this determination.
 {¶ 27} Moreover, contrary to Progressive's assertions, there are no questions of fact presented by this case. Thus, Progressive's argument that the trial court will be forced to review all of Progressive's policies and the policy choices of the class members is without merit. As discussed above, Progressive's watercraft policies are materially identical, and none of the members of either class, as defined, purchased policies that specifically allowed for betterment deductions. That the class members could have opted for policies that provided more coverage is irrelevant to Progressive's contractual obligations under the policies the class members did purchase.
 {¶ 28} The fifth requirement of Civ.R. 23 is satisfied because Peterson's claim — that Progressive was prohibited from taking betterment deductions from the cost of repairs — is not only typical of the class members' claims, it is identical to the claims of all members of the class. Moreover, the watercraft policy that Peterson purchased is materially the same as those policies purchased by other class members. Because "there is no express conflict between the representative and the class," the typicality requirement of Civ.R. 23 has been satisfied. Warnerv. Waste Management (1988), 36 Ohio St.3d 91, 98.
 {¶ 29} As to the requirement that Peterson fairly and adequately protect the interests of the class, Progressive's arguments to the contrary are unpersuasive. "A representative is deemed adequate so long as his interest is not antagonistic to that of other class members." Id. Progressive's challenge to Peterson rests upon his failure to discuss matters in his past relating to, among other things, traffic tickets and divorce proceedings. There is no evidence, however, that Peterson provided false or misleading testimony as to any matters relating to the instant lawsuit or that his interests conflict with other class members. Nor is there any allegation that Peterson's counsel is ill-equipped to pursue the lawsuit. We therefore find that Peterson is qualified to fairly and adequately protect the interests of the class.[4]
 {¶ 30} Accordingly, under Civ.R. 23, we find that Peterson has clearly defined two identifiable and manageable classes, and that a question of law common to all members of both classes predominates over any individual legal issues that may arise. A single adjudication as a class action is therefore the most efficient and fair manner by which to resolve the matter.Schmidt v. Avco Corp., supra, at 313.
 {¶ 31} For all of the foregoing reasons, we reverse, in part, the trial court's decision granting summary judgment to Progressive and grant summary judgment to Peterson on his claim for breach of contract; we affirm the trial court's rulings on the summary judgment motions on the claims for bad faith and unjust enrichment; we reverse the trial court's denial of the motion for class certification; and we remand the case for further proceedings consistent with this opinion.
Judgment accordingly.
It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, P.J., and Calabrese, Jr., J., Concur.
[1] Plaintiff named Progressive Corporation and 21 additional and separately incorporated Progressive insurance companies as defendants in the action.
[2] Peterson purchased the policy from Progressive Casualty Insurance Company.
[3] Peterson's definition of the two classes excludes watercraft policies issued in the state of Washington and those that specifically contain and define the term "betterment."
[4] Progressive argues that Peterson does not have standing to bring a claim against any entity other than Progressive Casualty since he did not purchase an insurance policy from the other 21 defendants. However, once the requirements of Civ.R. 23 have been met and a class has been properly certified, standing is determined in reference to the class as a whole, not simply in reference to individual named plaintiffs. Payton v. County ofKane, 308 F.3d 673, 680 (7th Cir. 2002); see also Sosna v.Iowa, 419 U.S. 393, 399 (1975); Fallick v. Nationwide,162 F.3d 410, 423 (6th Cir. 1998) (a plaintiff with standing to sue at least one named defendant "has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants," and it is not necessary for each named plaintiff to have individual standing to sue each named defendant).