2009 UT 5

**Chris Ann Williams MELLOR, individually and as guardian of Hayden Williams, Appellant, and Cross–Appellee,**

v.

**WASATCH CREST MUTUAL INSURANCE COMPANY, in Liquidation, Wasatch Crest Mutual Insurance Company in Liquidation, and Utah Life and Health Insurance Guaranty Association, Appellees, and Cross–Appellants.**

No. 20070763.

Supreme Court of Utah.

Jan. 27, 2009.

Brian S. King, James L. Harris, Bradley R. Sidle, Salt Lake City, for appellant.

J. Ray Barrios, Jr., Salt Lake City, for appellee.

Wasatch Crest Mutual Insurance Company Maxwell A. Miller, Randy M. Grimshaw, Salt Lake City, for appellee Utah Life and Health.

WILKINS, Justice:

¶ 1 Appellant Chris Ann Williams Mellor appeals from an adverse order of the district court which held that her minor son, Hayden Williams, was not covered by a Wasatch Crest Mutual Insurance Company health plan when he suffered a near drowning accident on August 3, 2001. Appellees Wasatch Crest and Utah Life and Health Insurance Guaranty Association cross-appeal the district court's holding that Ms. Mellor has standing in this case to bring an action on behalf of her minor son. We affirm the district court's holding as to standing but reverse on the issue of coverage.

## BACKGROUND

¶ 2 Hayden Williams' father, Justin Williams, was employed by Mellor Engineer-ing. During his employment, Mr. Williams participated in Mellor Engineering's employee welfare benefits plan, which was provided through Wasatch Crest Insurance Company (Wasatch Crest). Both Ms. Mellor and Hayden were beneficiaries under the Wasatch Crest plan. When Mr. Williams' employment with Mellor Engineering terminated in August 2000, he elected to continue health coverage for himself and his family through the Wasatch Crest plan under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). Mr. Williams and Ms. Mellor divorced in March 2001. COBRA premiums continued to be paid for Hayden, and Wasatch Crest continued to accept them, through November 7, 2001.

¶ 3 On August 3, 2001, Hayden suffered a near drowning accident which resulted in catastrophic, permanent injuries. Because of the overwhelming medical expenses and the prospect of ongoing expenses for Hayden's future care, Ms. Mellor applied for Medicaid coverage for Hayden two weeks after the accident. The application was approved in September 2001. Under Medicaid guidelines, and because of the need to ensure coverage for Hayden's past and future medical expenses, Hayden's effective coverage date was backdated to August 1, 2001.

¶ 4 The Wasatch Crest plan continued to make payments for Hayden's medical care until November 2001. At that time, Wasatch Crest asserted that under language of the plan, it had no obligation to continue coverage for Hayden after Medicaid coverage began on August 1, 2001. Wasatch Crest requested reimbursement from Hayden's health care providers and collected from many of them. In August of 2002, the Utah State Office of Recovery Services (ORS) began an effort to collect money from Wasatch Crest which it alleged had been improperly paid by Medicaid and should have been paid by the Wasatch Crest plan. A month later, ORS entered into a Collection Agreement with Ms. Mellor which authorized Ms. Mellor to include ORS's claim for reimbursement with her civil claims against Wasatch Crest, with ORS as an assignee of her rights of recovery.

¶ 5 On July 11, 2003, Wasatch Crest was declared insolvent. The district court set July 31, 2004 as the deadline for filing a proof of claim against the Wasatch Crest estate in liquidation. Ms. Mellor filed a timely claim. The claims in liquidation are being administered by Utah Life and Health Insurance Guaranty Association (ULHIGA), which thus became a party to this action.

¶ 6 A referee appointed to adjudicate disputes between claimants and Wasatch Crest's liquidator ruled that, under the language of the Wasatch Crest Plan, Wasatch Crest had no obligation to pay any of Hayden's medical expenses as of August 1, 2001. Ms. Mellor filed an objection with the Third District Court. At the subsequent hearing, Wasatch Crest and ULHIGA alleged that Ms. Mellor did not have standing to file a claim in the liquidation proceeding. The court agreed that Ms. Mellor did not have standing in her own right, but ruled that Ms. Mellor did have standing to file a claim on behalf of Hayden. The court further determined that while some of the documents that had been generated in connection with the claim had not always clearly designated that Ms. Mellor was acting in Hayden's behalf, it had been understood since the time that Ms. Mellor first initiated civil action that she was acting for Hayden. Nevertheless, the court approved the referee's findings as to Wasatch Crest's liability, ruling that Hayden had not been covered by the Wasatch Crest plan at the time of his accident. Ms. Mellor appealed the ruling on coverage to this court, and Wasatch Crest and ULHIGA cross-appealed on the issue of standing.

## STANDARD OF REVIEW

██ ¶ 7 An insurance policy is a contract between the insured and the insurer. *Saleh v. Farmers Ins. Exch.*, 2006 UT 20 ¶ 14, 133 P.3d 428. Questions of contract interpretation which are confined to the language of the contract itself are questions of law, which we review for correctness. *Fairbourn Commer., Inc. v. Am. Hous. Ptns., Inc.*, 2004 UT 54, ¶ 6, 94 P.3d 292. Likewise, a determination of standing is generally a question of law, which we review for correctness. *Kearns–Tribune Corp. v. Wilkinson*,

946 P.2d 372, 373 (Utah 1997); *see also State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

### I. MS. MELLOR HAS STANDING ON BEHALF OF HER MINOR SON HAYDEN

¶ 8 As an employer sponsored welfare benefits plan, the Wasatch Crest insurance plan at issue is governed by the Employee Retirement Income Security Act (ERISA). *See* 29 U.S.C. § 1003(a) (2008). ERISA contains a specific provision governing standing. It provides, "A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights to future benefits under the terms of the plan, or to clarify his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B)(2008).

██ ¶ 9 Thus, the issues in this case are interdependent; if Hayden is "a participant or beneficiary" under the Wasatch Crest plan, he has standing to bring an action in this case. *Id.* As we discuss in detail below, we hold that Hayden was a participant or beneficiary under the Wasatch Crest plan, a status which entitles him to pursue recovery of any benefits which may be owing to him under the plan through the courts. Given Hayden's status as a minor child, it follows that his mother, Ms. Mellor, has standing to bring an action on his behalf. *See* Utah R. Civ. P. 17(a)-(b).

¶ 10 Appellees have made much of the fact that Ms. Mellor has assigned all rights of recovery in this case to ORS through a Collection Agreement. They argue that because of this assignment Hayden is not the real party in interest in this case and that he therefore does not have standing to pursue a cause of action. On the contrary, the assignment has no effect on the standing of Hayden, or through Hayden, Ms. Mellor. The Collection Agreement does nothing more than place a lien in favor of ORS on any reimbursement for medical expenses that may be recovered from Wasatch Crest. Thus, beyond its function of routing any po-

tential recovery, the Collection Agreement has no relevance to the case before us.

## II. HAYDEN HAD COVERAGE UNDER THE WASATCH CREST PLAN ON THE DATE OF HIS ACCIDENT

¶ 11 The COBRA modifications to ERISA require that "an employer who sponsors a group health plan ... give the plan's 'qualified beneficiaries' the opportunity to elect 'continuation coverage' under the plan when the beneficiaries might otherwise lose coverage upon the occurrence of certain 'qualifying events,' including ... the termination of the covered employee's employment...." *Geissal v. Moore Med. Corp.*, 524 U.S. 74, 79–80, 118 S.Ct. 1869, 141 L.Ed.2d 64 (1998) (quoting 29 U.S.C. § 1163). When Mr. Williams' employment with Mellor Engineering terminated, Mr. Williams elected continuation coverage for himself and his dependents, including Hayden, pursuant to this statute. No responsible party subsequently took any affirmative action to remove Hayden from the Wasatch Crest plan. Appellants nonetheless argue that, under the language of the plan, Hayden's coverage terminated on August 1, 2001 when Hayden became covered by Medicaid. We therefore must determine whether coverage was terminated by operation of law.

### A. *Exclusion 4 and Exclusion 17 Create an Inconsistency in the Wasatch Crest Plan and Are Therefore Ambiguous*

¶ 12 At issue is the interplay between two exclusions to coverage in the Wasatch Crest plan as outlined in "Part 7–Exclusions" of the plan:

4. Expenses covered by programs created by the laws of the United States, any state, or any political subdivision of a state.

17. Services, supplies, or treatment for which Benefits are provided under Medicare or any other government program, except Medicaid.

We have previously held that an insurance contract must communicate its terms with sufficient clarity that it can be understood by a reasonable purchaser of insurance. *Farmers Ins. Exch. v. Versaw*, 2004 UT 73, ¶ 8, 99

P.3d 796. The test for clarity in an insurance contract is as follows:

[W]ould the meaning be plain to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy[?]

*Auto Lease Co. v. Cent. Mut. Ins. Co.*, 7 Utah 2d 336, 325 P.2d 264, 266 (1958). "Whether an ambiguity exists in [an insurance] contract is a question of law." *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 14, 133 P.3d 428 (internal quotation marks omitted). We therefore review for correctness. *Id.*

¶ 13 We have observed that "ambiguities typically appear in two forms: 'An ambiguity in a contract may arise (1) because of vague or ambiguous language in a particular provision or (2) because two or more contract provisions, when read together, give rise to different or inconsistent meanings, even though each provision is clear when read alone.'" *Farmers Ins. Exch.*, 2004 UT 73, ¶ 9, 99 P.3d 796 (quoting *U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 523 (Utah 1993)).

¶ 14 The ambiguity in the present case is of the second variety. Medicaid is clearly a "program created by the laws of the United States, any state, or any political subdivision of a state." *See* 42 U.S.C. §§ 1396–1396w–1 (2008). Therefore, exclusion 4 indicates that expenses covered by Medicaid, as are the disputed expenses in this case, are not covered by the Wasatch Crest plan. However, exclusion 17 indicates exactly the opposite— that while "services, supplies, or treatment" covered by "Medicare or any other government program" will not also be covered by the Wasatch Crest plan, "services, supplies, or treatment" covered specifically by Medicaid are not excluded from plan coverage.

¶ 15 Appellees attempt to read these two provisions consistently by arguing that "services, supplies, or treatment" in exclusion 17 represent a small, covered exception carved out of the larger category of excluded "expenses" in exclusion 4. However, Appellees are unable to provide us with a single example of an "expense" that could not also be categorized as a "service, supply, or treat-

ment." Such a distinction is surely equally beyond the understanding of a reasonable purchaser of insurance. We therefore hold that the two provisions when read together give rise to inconsistent meanings and that the language of the Wasatch Crest plan is consequently ambiguous.

¶ 16 Insurance contracts are generally drafted by the insurance companies and allow no opportunity for negotiation of the terms by the insured. *Farmers Ins. Exch.*, 2004 UT 73, ¶ 24, 99 P.3d 796. In light of this fact, and in order to assure that the purpose for which the policy was purchased and the premiums were paid is not defeated, we interpret insurance policies liberally in favor of the insured. *U.S. Fid. & Guar. Co.*, 854 P.2d at 521. We have therefore held that when an ambiguity exists in an insurance contract, that ambiguity is interpreted in favor of coverage. *Id.* at 522–523. More specifically, "[I]f an insurance contract has inconsistent provisions, one which can be construed against coverage and one which can be construed in favor of coverage, the contract should be construed in favor of coverage." *Id.* at 523 (internal citations omitted). Thus, we construe the ambiguities in the Wasatch Crest policy in favor of coverage and therefore reverse the decision of the district court.

*B.   Federal and State Law Prohibit Wasatch Crest from Terminating Coverage Because Hayden Became Covered by Medicaid*

¶ 17 Both federal and state law evidence a clear policy of prohibiting insurance companies from shifting their obligation for medical expenses to the taxpayer-funded Medicaid program. ERISA, as amended by COBRA, provides that COBRA coverage cannot be limited by a plan beneficiary's eligibility for or participation in Medicaid:

> A group health plan shall provide that, in enrolling an individual as a participant or beneficiary or in determining or making any payments for benefits of an individual as a participant or beneficiary, the fact

that the individual is eligible for or is provided medical assistance under a State plan for medical assistance approved under title XIX of the Social Security Act[1] . . . will not be taken into account.

29 U.S.C. § 1169(b)(2) (2008).

¶ 18 ERISA generally preempts state law. *See* 29 U.S.C. § 1144(a)(2008). An exception exists for state laws created to aid in recovering state Medicaid funds from employee welfare benefit plans. *Id.* § 1144(b)(8)(B). Therefore, Utah employee benefit plans must comply with Utah Code section 26-19-9 which prohibits employer sponsored health insurance plans from excluding from coverage health care expenses that are also eligible for coverage under Medicaid:

> As allowed pursuant to 29 U.S.C. Section 1144, an employee benefit plan may not include any provision that has the effect of limiting or excluding coverage or payment for any health care for an individual who would otherwise be covered or entitled to benefits or services under the terms of the employee benefit plan based on the fact that the individual is eligible for or is provided services under the state plan.

Utah Code Ann. § 26-19-9 (2007).

¶ 19 Appellees argue that the Wasatch Crest plan complies with the Utah statute because it specifies in exclusion 17 that "services" covered by Medicaid are not excluded. However, this argument fails because regardless of whether the Wasatch Crest plan nominally complies, if exclusion 4 precludes coverage for any expenses covered by a government program, it "has the effect of limiting or excluding coverage or payment for any health care for an individual who would otherwise be covered or entitled to benefits or services under the terms of the . . . plan." *Id.*

¶ 20 In order to interpret the Wasatch Crest plan in conformity with the relevant federal and state statutes, we read exclusions 4 and 17 to operate in such a manner that they do not preclude coverage for medical

---

1. Title XIX of the Social Security Act creates the Medicaid program. 42 U.S.C. § 1396–1396w–1 (2008).

expenses which are also covered by Medicaid. Indeed, we find additional justification for this reading in the Wasatch Crest plan itself, which states, "If any provision of this Policy is contrary to any law to which it is subject, such provision is hereby amended to conform thereto." Therefore, we hold that the terms of the Wasatch Crest plan did not operate to terminate Hayden's coverage as a matter of law when Hayden became eligible for Medicaid coverage.

## CONCLUSION

¶ 21 At best, exclusion 4 and exclusion 17 create an ambiguity in the Wasatch Crest policy. At worst, they evidence an attempt to comply with the nominal requirements of the law while at the same time circumventing the actual requirement of providing coverage regardless of whether a beneficiary is also covered by Medicaid. Under either scenario, we interpret the Wasatch Crest plan in favor of coverage. Since Hayden is a beneficiary of the Wasatch Crest plan, he, and through him his mother Ms. Mellor, have standing to pursue an action for recovery of benefits owing to Hayden under the plan.

¶ 22 Affirmed in part and reversed in part.

———

¶ 23 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.